THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY WEST, Defendant-Appellant.

(No. 56402; ▮▮▮▮▮▮▮▮▮

First District (4th Division)—July 11, 1973.

James J. Doherty, Public Defender, of Chicago, (Shelvin Singer, Assistant Public Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Russell Hartigan, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Henry West was charged with the crime of unlawful use of weapons for possessing or carrying a shotgun with a barrel less than 18 inches in length in violation of section 24—1(a)(7) of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a)(7).) After a bench trial, he was found guilty and sentenced to serve not less than two, nor more

than four years in the Illinois State Penitentiary. Defendant raises the following issues on appeal:

    1. Whether defendant was proven guilty beyond a reasonable doubt; and

    2. Whether the evidence was sufficient to prove that the defendant knowingly and understandingly waived his right to a jury trial.

The facts are as follows:

On March 16, 1971, at approximately 2:40 A.M., Chicago Police Officers, John Marsek and Donald Houlihan responded to a radio call concerning the shooting of a man in the vicinity of 812 W. Maxwell Street in the city. Officer Marsek testified that as the officers approached the scene, he saw defendant running eastbound on Maxwell Street, carrying two objects in his possession, and that as the officer approached him, defendant suddenly changed his direction and ran back westbound on Maxwell Street where he was observed throwing the objects underneath an empty hot dog stand at 806 W. Maxwell Street, before proceeding again eastbound. Officer Marsek observed one of the objects as long and in a paper bag and the other as being smaller. Defendant was stopped by the officers about 10 or 15 feet from the hot dog stand, searched and released after defendant stated that he was looking for his brother, who was the individual who had been shot. Defendant then got into the back of a police squadrol which was going to the Cook County Hospital.

After the defendant left, the officers returned to the hot dog stand, where they found under the stand, a .38 caliber revolver and a paper bag containing a sawed-off shotgun with a barrel fourteen inches in length. Officer Marsek testified that only a few minutes elapsed between the time that defendant was stopped and the time that the weapons were recovered. He stated further that to his knowledge, no one had approached the stand during the time the defendant was stopped some 10 feet from the stand, nor during the short interval before the officers returned to the stand.

Officer Houlihan, Officer Marsek's partner, testified that he too observed defendant going eastbound on Maxwell Street from Halsted Street and that when defendant observed the squad car, he proceeded to go back westward toward Halsted Street and then he threw an object under the hot dog stand. Officer Houlihan stated that he and his partner stopped approximately fifteen feet from the hot dog stand and that defendant was released when he explained that his brother had just been shot. The officers then examined the immediate vicinity of the hot dog stand where they found a .38 caliber revolver and beside it, enclosed in a paper bag, a sawed-off shotgun with a fourteen inch barrel. Officer

Houlihan stated that a crowd of people had formed on the corner some 15-to-20 feet from the stand, but that he never observed anyone come within 10 or 15 feet of the stand.

Ronald Knollmueller, a detective with the Chicago Police Department testified that on March 16, 1971, he was investigating a double shooting which occurred at 812 West Maxwell Street, and that he had a conversation with defendant who was a witness to the shootings. Detective Knollmueller related that defendant told him that he was in his brother's apartment on the night in question when two male Negroes entered the room, one with a sawed-off shotgun and the other with a revolver, and demanded money. Defendant stated that someone turned off the lights and that he struggled with the man who held the shotgun and that numerous shots were fired in the room. Everyone then fled from the room including defendant's brother who was wounded. Detective Knollmueller testified that he also had a second conversation with defendant at which time defendant stated that when the lights went out, he grabbed a revolver which was lying on a table in the room and fired several shots. Detective Knollmueller testified that defendant then stated that he wrestled the shotgun from the offender and ran down onto Maxwell Street with the weapons, disposing of them under a hot dog stand. Detective Knollmueller then testified that he met with Officers Marsek and Houlihan, who told him of finding the weapons under the hot dog stand and defendant was informed of his rights and placed under arrest.

Defendant's counsel objected to Detective Knollmueller testifying to remarks and admissions allegedly made by defendant, contending that the admission of any such remarks would be violative of defendant's constitutional rights as enunciated by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. The trial court ruled that at the time defendant made his second statement to Detective Knollmueller, the investigation had focused upon defendant and as defendant was not warned of his constitutional rights at that time, defendant's statements would indeed be suppressed.

Defendant then testified in his own behalf. He stated that on the night in question, he was visiting his brother when two men entered the room, one carrying a sawed-off shotgun, and they announced a hold up. Defendant testified that the lights went out and shots were fired. When the lights came back on, one of the intruders was lying wounded and defendant's brother had gone. Defendant testified that he was told that his brother had been shot and that he proceeded from the room onto Maxwell Street and tried to catch up to his brother. Defendant stated that he had nothing in his hands at that time. Defendant related that as he approached the corner in the direction he had been told his brother

had gone, he was stopped by police officers and searched. He was released and entered a police van which was taking his wounded brother to the hospital. Defendant was later arrested at the hospital. He denied ever having the weapons in question in his possession and stated he never threw anything under the hot dog stand. He also denied ever telling Detective Knollmueller that he struggled with one of the intruders or that he fired any shots from a revolver.

The State recalled Detective Knollmueller in rebuttal. The detective testified that defendant told him at the hospital that when two intruders entered his brother's room, defendant struggled with one and that defendant picked up a revolver and fired it several times. Detective Knollmueller stated that defendant also told him that he then picked up a shotgun and a revolver, ran onto Maxwell Street with the weapons and threw them underneath a hot dog stand.

At the close of all the evidence, the trial court found defendant guilty and sentenced him to serve not less than two, nor more than four years in the Illinois State Penitentiary. Defendant appeals from that judgment.

Defendant's initial contention on appeal is that he was not proven guilty of unlawful use of weapons beyond a reasonable doubt. In support of this contention, defendant maintains:

(1) That the evidence offered by the State's witnesses was contradictory and improbable;

(2) That the fact defendant was initially searched and released renders implausible testimony that police officers saw defendant in possession of objects resembling firearms prior to his arrest; and

(3) That the court misused impeachment evidence as substantive evidence and in so doing violated defendant's constitutional rights.

Defendant contends that the testimony of the police officers is contradictory and improbable. Defendant focuses upon such discrepancies in the testimony as the statement by Officer Marsek that he first observed defendant 200 feet away, while Officer Houlihan stated he first observed defendant from a distance of 100 to 150 feet, and the statement by Officer Marsek that he observed defendant throw two objects underneath an empty hot dog stand, while Officer Houlihan, who was sitting across the seat of the patrol car from his partner and had a different vantage point, stated that he only saw defendant make a throwing motion before his view was blocked by the stand.

■■ The testimony of only one witness, if credible, is sufficient to sustain a conviction even as against a defendant's contradictory account.

*People v. Moore,* 42 Ill.2d 73, 246 N.E.2d 299; *People v. Williams,* 104 Ill.App.2d 329, 244 N.E.2d 347.

■ It is the province of the trial judge, who saw and heard the witnesses testify, to weigh the evidence, judge the credibility of witnesses and determine the facts in the case. (*People v. Cox,* 22 Ill.2d 534, 177 N.E.2d 211.) A reviewing court will not set aside a judgment of guilty unless the evidence is so palpably contrary to the judgment or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. *People v. Catlett,* 48 Ill.2d 56, 268 N.E.2d 378; *People v. Scott,* 38 Ill.2d 302, 231 N.E.2d 441.

■■ In the instant case, both Officer Marsek and Officer Houlihan testified to seeing defendant from their squad car, running eastbound on Maxwell Street and then proceeding in the opposite direction after defendant noticed the police car. When the officers first saw defendant he was carrying two objects, one long and one short. Both officers observed defendant throw the objects under a hot dog stand, where the officers recovered a shotgun and revolver moments later. After reviewing the record before us, we do not find that the testimony of the State's witnesses is so contradictory and improbable as to raise a reasonable doubt as to defendant's guilt.

Defendant further contends that the fact that he was arrested and searched at the scene and then released makes it doubtful that the officers ever did see him throw any weapons under the stand in question. The record in the case at bar, however, reveals that defendant was not arrested initially, but merely stopped by the officers because his running down the street appeared suspicious and it was only subsequently when it was found that the objects defendant was seen to be carrying and which he discarded were weapons, that the officers found probable cause to make the arrest they then effected.

■■ A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest. (*Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S. Ct. 1868.) Once it is determined, however, that an individual was improperly using weapons, probable cause to effect an arrest would arise. (*People v. Clay,* 133 Ill.App.2d 344, 273 N.E.2d 254.) In the instant case, we do not find that the actions of the officers makes their testimony, that they did in fact see defendant discard objects which they only thereafter found to be weapons, so improbable as to raise a reasonable doubt as to defendant's guilt.

Defendant also contends that the trial court improperly utilized im-

peachment evidence as substantive evidence of guilt, and that without such improper evidence, defendant could not have been convicted beyond a reasonable doubt.

■■ After Detective Knollmueller testified in the prosecution's case in chief that defendant admitted carrying the weapons in question and throwing them under the hot dog stand where they were recovered by the officers, the trial court determined that defendant had not been properly advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, before he made such confession and the court suppressed the admission of any statements defendant allegedly made to Detective Knollmueller. Statements inadmissible against a defendant in the prosecution's case in chief because of lack of the procedural safeguards required by *Miranda,* may, nevertheless, if their trustworthiness satisfies legal standards, be offered for impeachment purposes to attack the credibility of any testimony the defendant might offer at trial. The impeaching statement, however, may not properly be used as evidence of guilt. (*Harris v. New York,* 401 U.S. 222, 28 L.Ed. 1, 91 S.Ct. 643.) In the instant case, after defendant testified on his own behalf that he never made a statement wherein he stated that he did have such weapons in his possession, Detective Knollmueller was recalled by the State in rebuttal, for the purpose of impeaching defendant's testimony. Detective Knollmueller then testified that defendant confessed to him that he had in fact possessed the weapons in question and that he had disposed of those weapons under a hot dog stand. Defendant, on appeal, concedes that such testimony by Detective Knollmueller could properly be offered under *Harris* for the purpose of impeaching the credibility of defendant's testimony. Defendant maintains, however, that the trial court erred in also using this impeachment as substantive evidence of defendants guilt. Defendant contends that if his alleged confession had not been improperly accepted as evidence of his guilt, he would not have been proven guilty beyond a reasonable doubt and cites statements from the trial judge in support of his contention. At the close of the State's rebuttal testimony in the instant case, the trial judge reminded counsel to address themselves in their arguments to the suppressed confession offered for impeachment purposes and stated:

> "We have now, I don't want to direct your argument, but there is in this case this suppressed confession  *  *  *. It is now in the case. The court is of the opinion that without it, the State has not proved the case. Of course, it is in there for the purpose of the credibility of the defendant, yet it is in there also to bolster the State's case. It is a situation whereby without that statement the

court was prepared to rule that the State has not proved its case beyond a reasonable doubt."

Defendant contends that these statements by the trial judge are a direct admission that the court improperly used defendant's statements for proof of guilt as well as for impeachment purposes.

■■ It is well settled that in a bench trial, the trial court is presumed to consider only the competent evidence adduced at trial and to disregard any incompetent evidence. *People v. Mays,* 48 Ill.2d 164, 269 N.E.2d 281; *People v. Palmer,* 26 Ill.2d 464, 187 N.E.2d 236.

■■ The record in the instant case reveals that after Detective Knoll-mueller testified to the confession by defendant, the court listened to arguments by counsel and determined that such confessions should be suppressed. Immediately thereafter defendant's counsel moved for a directed finding based upon the State's evidence. A directed finding of not guilty is proper when the evidence adduced by the State, when viewed in a light most favorable to the State, fails to establish the guilt of defendant beyond a reasonable doubt. (Ill. Rev. Stat. 1971, ch. 38, par. 115—4(k).) The trial court denied defendant's motion for a directed verdict and thus indicated that without considering defendant's confession which the court had just suppressed, the State's evidence was still sufficient.

■■ After a careful review of the record, we do not find that the trial court utilized impeachment evidence as evidence of defendant's guilt to improperly find him guilty beyond a reasonable doubt.

Defendant's final contention on appeal is that the trial judge erred in failing to adequately inform defendant of his right to a jury trial and in failing to obtain a knowing and understanding waiver of that right before proceeding to hear the case. Defendant contends that the court erred by not advising him of his right to a jury trial until after a few questions had already been asked of the first witness and that he did not knowingly and understandingly waive his right to a jury trial and cites *People v. Rambo,* 23 Ill.App.2d 299, 260 N.E.2d 119, in support of his contention. In *Rambo,* a sixteen year old was convicted of murder in a bench trial in which he was informed of his right to a trial by jury and where he signed a jury waiver, but where the court never obtained defendant's overt expression of such waiver either by defendant or by his attorney. In reversing that conviction, the Illinois Appellate Court merely pointed out that while the defendant, who was a minor and charged with a serious offense, was adequately informed of his right to a jury trial, neither he nor his counsel were asked whether defendant wished to waive that right. Under those circumstances, the court found mere execution of a written jury waiver to be insufficient.

The record in the instant case discloses the following colloquy between the court and defendant and his privately retained counsel:

"THE COURT: Mr. West.

DEFENDANT WEST: Yes.

THE COURT: Would you step up here for a moment.

THE COURT: Mr. West, I hold in my hand a document known as a jury waiver in which your signature appears on it. You are aware, Mr. West, that you are entitled to a jury trial in which your innocence would be determined by twelve people.

DEFENDANT WEST: Yes.

THE COURT:Are you not? And are you aware that by signing this document you are giving up your right to a jury trial.

DEFENDANT WEST: Yes, sir.

THE COURT: And you want to submit your guilt or innocence to the court.

DEFENDANT WEST: Yes sir.

THE COURT: Very well.

THE ATTORNEY: Thank you Your Honor."

■■ Our examination of the record in the case at bar reveals that defendant was adequately informed of his right to a jury trial. We find that defendant, who had previously been convicted of felonies and was thus not a stranger to the criminal justice system, knowingly and understandingly waived his right to a jury trial. Although the court admonished defendant after the first witness had begun to testify, we find that in the instant case, the temporary delay did not prejudice the defendant nor deny him any constitutional right.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.