THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HELEN EASTER, Defendant-Appellant.

First District (3rd Division)　No. 80-393

Opinion filed December 23, 1981.

Edward M. Genson and Alan D. Blumenthal, both of Chicago (Jeffrey B. Steinback, of counsel), and Susan M. Coleman, legal intern, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Defendant, Helen Easter, was charged with two counts of murder and two counts of armed violence. The felonies underlying the charges of armed violence were murder and voluntary manslaughter. Following a jury trial, defendant was convicted of voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—2) and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2) based on the predicate offense of voluntary manslaughter. She received a six-year sentence for armed violence and a three-year sentence for voluntary manslaughter, the sentences to run concurrently. On appeal defendant argues that (1) the indictment was insufficient to adequately charge the offense of armed violence based on the underlying felony of voluntary manslaughter; (2) application of the armed violence statute was unconstitutional; (3) the court erred in denying her pretrial motion to dismiss the indictment for murder due to prosecutorial misconduct during the grand jury proceedings; (4) she was not proved guilty beyond a reasonable doubt; (5) the court erred in failing to rule on her motion for a directed verdict; and (6) the court improperly refused jury instructions propounded by defendant. We affirm in part, reverse in part and remand.

Around 11:30 p.m. on September 8, 1978, defendant drove her Cadillac to the tavern she owned at 702 E. 43rd Street in Chicago, Illinois. Since several people were standing around outside her tavern, and since defendant previously had problems with people sitting on her car, she parked her car across the street from her tavern by a public park. Around 2 a.m., defendant noticed that people were sitting on her car, She told her daughter, Peggy, to move the car, and she gave Peggy the car keys. While going to move the car, Peggy became involved in an argument with the victim, Billy Colbert, a man with whom she had formerly had a relationship. The victim was standing on the passenger side of defendant's car, the side closest to the public park. When Peggy entered the car, the victim kicked the car on the passenger side. Peggy then exited the car and went to get her mother.

Meanwhile, defendant had been watching the scene from inside her tavern. According to defendant, she grabbed a purse containing a .38 revolver which she kept in a drawer by her cash register and rushed outside. Defendant and the victim started cursing each other and calling each other names. According to defendant, the victim threatened to "kick my ass and Peggy's ass." Defendant entered her car, and the victim again kicked the car on the passenger side. Realizing that she did not have her car keys, defendant recrossed the street to retrieve her keys from Peggy. Defendant then re-entered the car and started the motor. Defendant stated that at this point the victim said, "I am going to get you bitch, and I am going to get you now." He then began pulling on the passenger door

of the car, which was locked. Defendant then exited her car on the driver's side with the gun in her hand.

There is conflicting testimony as to what occurred next. According to defendant, the victim walked to the back of the car and threatened her again. He had a bottle in one hand and had the other drawn back in a fist. When the victim rushed at her, she closed her eyes and started shooting. Upon opening her eyes, she saw the victim running. Defendant was unsure how many times she fired. She dropped the gun and returned to the tavern.

There was testimony that the victim's arms were raised and his hands were empty at the time he was shot. He took a few steps backward and then turned and ran. Defendant fired twice, paused, and fired three more times. There was also testimony that defendant was urged by her daughter to kill the victim.

A pathologist testified that an examination of the victim revealed a high level of alcohol as well as two entry and two exit projectile wounds. He explained that one bullet entered the left armpit and exited in the back area. The second bullet entered the victim's back and exited in front. This bullet passed through several vital organs, and it caused the victim's death.

Defendant first argues that her conviction for armed violence based on the predicate felony of voluntary manslaughter should be reversed because the indictment did not adequately charge this offense. We agree.

Defendant was charged in four counts. In counts I and II, she was charged with murder. In count III, she was charged with armed violence based on the predicate offense of murder, and in count IV, she was charged with armed violence based on the predicate offense of voluntary manslaughter. Count IV specifically charged that defendant "committed the offense of armed violence in that she, while armed with a dangerous weapon, to wit: a gun, committed a felony defined by Illinois Law, to wit: voluntary manslaughter, in violation of Chapter 38, Section 33A—2, of the Illinois Revised Statutes 1977, as amended." Defendant unsuccessfully challenged this charge in her motion in arrest of judgment where she claimed that count IV of the indictment failed to state a cause of action.

■■ Both the Federal and the State constitutions provide that an accused has the right to be informed of the nature and cause of the accusation against him. (U.S. Const., amend VI; Ill. Const. 1970, art. I, §8.) Section 111—3 of the Code of Criminal Procedure of 1963 implements this right by requiring, among other things, that a charge be in writing, and that it state the name of the offense, the statutory provision alleged to have been violated, and the nature and elements of the offense charged. (Ill. Rev. Stat. 1977, ch. 38, par. 111—3(a)(1) through (3).) Moreover, where the crime of armed violence is charged, the nature and elements of the

underlying offense must also be charged. (*People v. Van Winkle* (1980), 86 Ill. App. 3d 289, 293, 408 N.E.2d 29, 32; see *People v. Goodman* (1973), 12 Ill. App. 3d 400, 401-02, 298 N.E.2d 1, 2.) When review of the sufficiency of a charging instrument challenged in a motion in arrest of judgment (Ill. Rev. Stat. 1977, ch. 38, par. 116—2) is sought, the reviewing court must determine whether the indictment comports with the requirements of section 111—3. (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 648, 378 N.E.2d 1200, 1203.) Compliance with these requirements is mandatory, not directory. *People v. Deal* (1979), 69 Ill. App. 3d 74, 76, 387 N.E.2d 21, 23; see *People v. Hahn* (1980), 82 Ill. App. 3d 173, 176, 402 N.E.2d 895, 898.

■■ It is clear that in the case before us the count charging defendant with armed violence based on the underlying offense of voluntary manslaughter is inadequate. The indictment makes no reference to either of the alternative statutory provisions regarding voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, pars. 9—2(a), 9—2(b)), and it fails to set forth the nature and elements of such an offense.

In *People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5, the defendant was charged with the same offenses as those involved here. The charge in *Miles* concerning armed violence based on the underlying offense of voluntary manslaughter was worded similarly to the charge in this case, except that it also included a reference to the voluntary manslaughter statute, section 9—2(b). In determining that the information was not sufficient, the court stated that the reference in the information to section 9—2(b) did not incorporate that statute or its elements. According to the court, absent specification of the elements of one of the alternate forms of voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a) or 9—2(b)), the defendant was not made aware from the face of the information of the exact nature of the offense with which he was charged. The court recognized that an information charging murder is sufficient to charge any underlying offense, including voluntary manslaughter. The court declined, however, to extend this rule to the situation before it where voluntary manslaughter was the underlying offense for the commission of armed violence and the information included a count stating the elements of murder but not of voluntary manslaughter. The court concluded that under these circumstances, an information or indictment must contain the elements of voluntary manslaughter, whether these elements are stated in the armed violence count or in a separate count.

The *Miles* decision clearly governs the present case. Here, the indictment charging defendant with armed violence based on the predicate offense of voluntary manslaughter is even more deficient than the one involved in *Miles* since it contains neither a statutory reference to one of the alternative forms of voluntary manslaughter nor the nature and

elements of one of those alternatives. (See *People v. Lutz* (1978), 73 Ill. 2d 204, 211, 383 N.E.2d 171, 173-74; *People v. Caliendo* (1980), 84 Ill. App. 3d 987, 993-94, 405 N.E.2d 1133, 1138-39.) Since the indictment failed to charge defendant with the specificity mandated by the Federal and State constitutions and did not comply with the requirements of section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 111—3), defendant's conviction for armed violence must be reversed. In view of this determination, we need not address the constitutional arguments raised by defendant in regard to the armed violence statute.

Defendant next argues that the court erred in denying her pretrial motion to dismiss the indictment due to the prosecutor's misconduct during the grand jury proceedings. Specifically, defendant contends that the prosecutor did not call Amos Rico Bowers, the disk jockey at defendant's tavern, to appear before the grand jury even though Bowers gave exculpatory testimony at the preliminary hearing. In addition, defendant asserts that some of the grand jurors expressed an interest in Bowers after one of the witnesses was asked a question regarding him, and that the prosecutor failed to inform the grand jurors of their right to subpoena Bowers.

■■ A defendant has the burden of proving any irregularity in the grand jury proceedings, and mere speculation on defendant's part is insufficient to meet this burden. (*People v. Haag* (1979), 80 Ill. App. 3d 135, 138, 399 N.E.2d 284, 287.) Here, defendant failed to file a transcript of the preliminary hearing proceedings. Therefore, her contention that Bowers' testimony persuaded the judge to find probable cause as to voluntary manslaughter and not as to murder is only conjectural and without support in the record. Similarly, no transcript of the grand jury proceedings is included in the record, and the purported excerpts from the grand jury proceedings contained in defendant's pretrial motion and her appellate brief are unacceptable substitutes. (See *People v. Shestiuk* (1978), 59 Ill. App. 3d 296, 300, 376 N.E.2d 56, 59.) Matters not of record cannot be considered upon review. (*People v. Austin* (1977), 50 Ill. App. 3d 1012, 1017, 366 N.E.2d 135, 139.) Since the record before us is incomplete, we will resolve any doubts caused by the incompleteness against defendant and will presume that the trial court ruled correctly on this issue. See *People v. Fochs* (1976), 40 Ill. App. 3d 966, 967, 353 N.E.2d 326, 328.

We next address defendant's contention that she was not proved guilty of voluntary manslaughter beyond a reasonable doubt because the evidence showed that she was reasonable in her belief that the use of force was necessary for self-defense. We disagree.

In support of her argument that she reasonably believed that her use of force was justified, defendant points to evidence which shows that the victim was intoxicated, that he verbally accosted her and threatened her

with physical harm, and that he damaged her car. Moreover, she refrained from using force until the victim's threats against her intensified and she no longer could remain safely within her car. Upon exiting the car, defendant moved towards the rear of the car, as did the victim on the opposite side. It was then that defendant saw a bottle in the victim's hand. Yet, it was only after the victim threatened her again and rushed toward her with one hand drawn back in a fist and the bottle in the other hand that defendant resorted to force in self-defense.

■■ The jury, however, was not required to accept as true testimony presented by defendant regarding self-defense. (*People v. Harling* (1975), 29 Ill. App. 3d 1053, 1059, 331 N.E.2d 653, 658; *People v. French* (1972), 3 Ill. App. 3d 884, 887, 279 N.E.2d 519, 522.) Eyewitnesses to the shooting presented testimony which conflicted with that presented by defendant. Some of these witnesses testified that it was defendant who approached the victim after exiting her car with the gun in her hand. In addition, there was testimony that the victim's hands were empty at the time he was shot. Finally, the medical examiner's testimony showed that the fatal shot entered through the victim's back.

■■ It is the jury's function to resolve conflicts in the evidence and determine the credibility of the witnesses (*People v. Henry* (1980), 86 Ill. App. 3d 602, 604, 408 N.E.2d 228, 230; *People v. Vance* (1977), 53 Ill. App. 3d 573, 579, 368 N.E.2d 758, 763.) The testimony of the eyewitnesses and the medical examiner, if believed by the jury, was sufficient to support the voluntary manslaughter verdict. If the jury determined that defendant was the aggressor, then the defense of self-defense was unavailable to defendant. (See *People v. Oliver* (1973), 11 Ill. App. 3d 152, 156, 296 N.E.2d 70, 73.) Moreover, even if the jury believed that the victim was the aggressor, it still would have had to decide whether defendant's resort to force was reasonable under the circumstances and whether the amount of force used by defendant was commensurate with the force encountered. (*People v. Owens* (1977), 45 Ill. App. 3d 1012, 1016, 360 N.E.2d 481, 483.) Thus, the jury could have determined that defendant's use of deadly force was unreasonable and excessive under the circumstances, especially in view of the testimony that the victim was unarmed at the time he was shot. While there is no requirement that the victim possess a weapon in order to justify a killing in self-defense (*People v. Foster* (1980), 81 Ill. App. 3d 915, 922, 401 N.E.2d 1221, 1226), the absence of a weapon is a factor which may be considered. Additionally, while we agree with defendant that if the victim was the aggressor she was not required to retreat before employing force in self-defense (*People v. Harling* (1975), 29 Ill. App. 3d 1053, 1057, 331 N.E.2d 653, 657), she was not entitled to pursue and injure the victim once he attempted to flee any confrontation. (See *People v. Shappert* (1975), 34 Ill. App. 3d 683, 688, 340 N.E.2d 282,

285.) The jury could have accepted the testimony that the victim backed away from defendant and then turned and ran as defendant began firing. The fact that the fatal shot entered the victim in his back lends credence to this testimony. We conclude that the jury's determination that defendant was guilty of voluntary manslaughter is not so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

Defendant next argues that the court erred in failing to rule upon her motion for a directed verdict. She contends that this error was prejudicial and denied her a fair trial. This contention lacks merit.

At the close of the State's evidence, defendant moved for a directed verdict of not guilty as to the charge of murder. This motion was denied although the court expressed doubt that the State had proved intent, a requisite element of murder. Defendant again moved for a directed verdict of not guilty as to murder at the close of all the evidence. The court stated that it was reserving its ruling on the motion. Immediately preceding the jury's return to the courtroom to announce its verdict, the court denied defendant's motion.

According to defendant, the court found as a matter of law that the element of intent required for murder was not adequately proven, yet the court failed to so rule at the close of the State's evidence. She further argues that the court did not have the authority to reserve its ruling on the motion for a directed verdict. Defendant contends that she was prejudiced by the court's rulings because they led to a compromise verdict of voluntary manslaughter.

██ The court's authority to direct the jury to return a verdict of not guilty upon motion of the defendant is set forth in section 115—4(k) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(k)). Motions for a directed verdict of not guilty should be granted where the State's evidence, when viewed in a light most favorable to the State, fails to establish defendant's guilt beyond a reasonable doubt. (*People v. West* (1973), 13 Ill. App. 3d 550, 557, 300 N.E.2d 808, 813.) While there is no equivalent in the criminal statutes for section 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.1), which explicitly permits the court to reserve its ruling on a motion for directed verdict, there is no per se rule prohibiting the court in a criminal case from reserving its ruling on a defendant's motion for a directed verdict. See *People v. Faulkner* (1978), 64 Ill. App. 3d 453, 457, 381 N.E.2d 321, 324.

Although it may be inappropriate for a court to reserve its ruling on a defendant's motion for a directed verdict made at the close of the State's case because a defendant should not be forced to decide whether to produce evidence in his defense without knowing that the prosecutor's evidence was sufficient to establish his guilt (*People v. Trump* (1978), 62 Ill. App. 3d 747, 748, 379 N.E.2d 370, 371), we are not confronted with

that situation here. Contrary to defendant's assertion, the court did rule on her motion for a directed verdict made at the close of the State's evidence, and it denied the motion. While the colloquy between the court and counsel during arguments on the motion indicates that the court was concerned about the sufficiency of the proof of intent, the court nevertheless stated that it was denying the motion "at this time." We believe that this language, when read in conjunction with other remarks made by the court, did not import that the court was reserving its ruling on the motion. Rather, it was an indication to defendant that although her motion was being denied, she might renew her motion at the close of all the evidence. We conclude that the court did not err in denying defendant's motion for a directed verdict at the close of the State's case.

When defendant again sought a directed verdict of not guilty of murder at the close of all the evidence, the court did reserve its ruling. The motion was ruled upon when the jury was ready to return with its verdict. Since by this stage of the trial defendant had presented her evidence, there was no reason why the court could not exercise its discretion and reserve its ruling on the motion. (See *People v. Trump* (1978), 62 Ill. App. 3d 747, 748, 379 N.E.2d 370, 371.) Moreover, defendant was not prejudiced by the timing of the court's denial of the motion since the jury did not convict her of murder.

■■ In addition, defendant's contention that the submission of the murder charge to the jury resulted in a compromise verdict of voluntary manslaughter is untenable because, as previously discussed, the evidence amply supports the voluntary manslaughter conviction. Accordingly, even if the court should have directed a verdict of not guilty as to murder, any error caused by its failure to do so does not warrant reversal because it does not appear that real justice was denied thereby or that the jury's verdict may have resulted from such error. See *People v. Wright* (1974), 56 Ill. 2d 523, 533-34, 309 N.E.2d 537, 542, quoting *People v. Cavanaugh* (1958), 13 Ill. 2d 491, 492, 150 N.E.2d 592, 593.

In her last argument, defendant contends that she was denied a fair trial because the court refused instructions relevant to her theory of self-defense. The relevant portion of the applicable IPI Instruction for self-defense provides that a person is justified in the use of force which is likely to cause great bodily harm only if he reasonably believes that such force is necessary to prevent great bodily harm to himself or the commission of a forcible felony. (IPI Criminal No. 24.06.) Nevertheless, the court refused defendant's request to include the language "or the commission of a forcible felony" in the instruction given to the jury.

Defendant argues that she presented evidence at trial which justified her belief that the victim was in the process of committing a battery against her at the time she shot him, and that the incident took place at a

public park on a public sidewalk. Defendant points out that under section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8)), if the person committing a battery or the person being battered is on or about a public way, then the battery is enhanced to aggravated battery, which is a forcible felony (Ill. Rev. Stat. 1977, ch. 38, par. 2—8). Therefore, defendant argues, she was entitled to have the "or the commission of a forcible felony" language included when IPI Criminal No. 24.06 was given to the jury. Additionally, she contends that an instruction defining "forcible felony" should also have been given to the jury.

■■ Although we agree with defendant that she was entitled to have the "forcible felony" portion of IPI Criminal No. 24.06 given, we conclude that no reversible error occurred. The evidence relied on by defendant to support her contention that the omitted language should have been included is essentially the same as that on which the jury must have relied in determining that defendant was guilty of voluntary manslaughter. The jury's verdict necessarily reflects the jury's determination that defendant's belief that the use of deadly force was necessary to protect herself from imminent death or great bodily harm was unreasonable. In view of this determination, it is untenable to suggest that the jury would have found that defendant's use of deadly force when faced with a battery while on a public way was reasonable.

It follows that even if the additional portion of IPI Criminal No. 24.06 had been given to the jury, the outcome of the trial would not have been affected. We therefore conclude that any error caused by the court's failure to instruct the jury as to the justifiable use of force to prevent the commission of a forcible felony could only have been harmless. Our conclusion is supported by the fact that defendant has not indicated how she was prejudiced by the court's failure to give the requested portion of the instruction.

Accordingly, defendant's conviction for armed violence is reversed, and her conviction for voluntary manslaughter is affirmed. However, since the trial court may have been influenced by defendant's conviction for armed violence in sentencing defendant for voluntary manslaughter, we remand for a new sentencing hearing on the voluntary manslaughter conviction alone.

Affirmed in part, reversed in part and remanded.

McGILLICUDDY and WHITE, JJ., concur.