**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 1, 2005
Decided November 29, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 03-4148

| | |
|---|---|
| THOMAS DAMNITZ,<br>        *Petitioner-Appellant,*<br><br>                    *v.*<br><br>JESSE MONTGOMERY, Deputy<br>        Director of the Parole Division<br>        of the Illinois Department of<br>        Corrections,<br>        *Respondent-Appellee.* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division<br><br>No. 02 C 9420<br><br>Rebecca R. Pallmeyer,<br>*Judge.* |

**O R D E R**

Thomas Damnitz, convicted by an Illinois jury for shooting a rival gang member, appeals an order denying relief under 28 U.S.C. § 2254.  He claims the state court denied him due process by excluding evidence necessary to his defense.  A state court of appeals held that the evidence was admissible but any error in excluding it was harmless.  The district court found the state court ruling reasonable.  We affirm.

Damnitz was convicted of armed violence and two counts of aggravated battery (but acquitted of attempted murder and a third count of aggravated battery)

and sentenced to 25 years for shooting rival gang member Francisco Vargas. *People v. Damnitz*, 645 N.E.2d 465, 467 (Ill. App. Ct. 1994). Vargas survived to testify in court. According to the Illinois appellate court, the facts of the shooting were:

> [A]s Francisco Vargas drove past a school, he heard the loud sound of something hitting the side of his car. Vargas got out of the car and saw defendant standing in the schoolyard. Vargas chased defendant and hit him with a stick, knocking him to the ground. Vargas went back to his car. A few minutes later defendant shot Vargas.

*Id.*

At trial, Damnitz tried to make a self-defense argument. To this end, he introduced evidence that Vargas was a member of a street gang called the "Spanish Cobras," and that Vargas had repeatedly threatened Damnitz, who belonged to a gang called the "Freaks." *Id.* at 472. Additionally, Damnitz tried unsuccessfully to introduce evidence that the Spanish Cobras had firebombed his house, shot at him and his wife, and threatened his life. *Id.* at 471. The trial court refused to admit this second batch of evidence because it could not show that Vargas himself had acted violently in the past.

The appellate court concluded that the trial court did not err in excluding the evidence for the purpose of showing that Vargas was the aggressor because the evidence could not establish that Vargas personally took part in the firebombings or other violence. *Id.* at 471. Nevertheless, the court held it was error to exclude the evidence as irrelevant to Damnitz's state of mind because it could show that Damnitz reasonably believed that Vargas, a member of a violent gang, might use deadly force. *Id.* at 471–72. Still, as the court explained, the trial court permitted Damnitz to introduce evidence that Vargas belonged to the Spanish Cobras and had threatened Damnitz; there was also evidence in the record that Cobras had killed Freaks. *Id.* at 472. Given this evidence, the court explained, the second batch of evidence would "add little to the evidence the jury heard." *Id.* What is more, the evidence might convince the jury that Damnitz had a motive of "revenge" against the Cobras—which would actually undermine his defense that he was just protecting himself. *Id.* For these reasons, the court decided that the error was harmless. *Id.*

After pursuing a state post-conviction petition in which he argued that the evidentiary ruling denied him the constitutional right to present his defense, Damnitz petitioned for federal habeas corpus relief. The district court denied that relief because the appellate court's ruling was reasonable. The federal court certified for appeal the question whether Damnitz's "due process rights were violated by the trial court's decision to bar evidence of prior violent acts against

[him] and his family by other members of the street gang to which Vargas belonged." We appointed counsel to represent Damnitz; among other things, we directed counsel to address whether the district court should have denied relief without reviewing the *entire* trial transcript. (The district court had before it the transcript of Damnitz's offer of proof at trial describing the excluded testimony.)

Before proceeding to Damnitz's central arguments on appeal, there are two threshold issues we must address. First, the parties express confusion about whether 28 U.S.C. § 2254(d)(1)'s standard of review applies. It does. Damnitz filed his petition after the Antiterrorism and Effective Death Penalty Act's (AEDPA's) effective date, and although the appellate court on direct review wrote in terms of state evidentiary rules, it also decided that he was not denied his constitutional right to present a defense.[1] *See Hood v. Uchtman*, 414 F.3d 736, 738 (7th Cir. 2005); *Edmunds v. Deppisch*, 313 F.3d 997, 999 (7th Cir. 2002).

Second, the parties argue whether the issue certified for appeal—whether Damnitz's "due process rights were violated by the trial court's decision to bar evidence"—arises under the Sixth or Fourteenth Amendment. But it does not matter. As the Supreme Court wrote, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted); *see also Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 388 U.S. 14 (1967). No matter what the source of the right, relief is appropriate here only if the state ruling was so prejudicial that it compromised Damnitz's right to a fundamentally fair trial. *See Johnson v. Bett*, 349 F.3d 1030, 1035 (7th Cir. 2003); *Newell v. Hanks*, 335 F.3d 629, 633 (7th Cir. 2003); *Gardner v. Barnett*, 199 F.3d 915 (7th Cir. 1999) (en banc).

Turning to the main issue, Damnitz argues that excluding the evidence of past gang violence unconstitutionally abridged his right to put on a meaningful defense because the evidence "went to the heart of his case and the State had no interest in excluding it." He maintains that the evidence that Spanish Cobras had firebombed his house, shot at him and his wife, and threatened his life was essential to his defense because it was much more powerful than the evidence

---

[1]The record does not include Damnitz's briefs on direct appeal, so there is no way to know whether he cast his argument in constitutional terms. But he framed them under the Constitution on state post-conviction review; those courts relied on *res judicata* to deny relief. Compare *Moore v. Bryant*, 295 F.3d 771 (7th Cir. 2002).

actually admitted—that Vargas was a Spanish Cobra and had threatened him (but not necessarily with death).

To be entitled to relief, a petitioner must show that exclusion of evidence "significantly undermined fundamental elements of the accused's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998), *quoted in Alley v. Bell*, 307 F.3d 380, 394 (6th Cir. 2002). Damnitz therefore must show that the excluded evidence could have helped him establish his self-defense theory under Illinois law, *see Perruquet v. Briley*, 390 F.3d 505, 511–12 (7th Cir. 2004); *Carbajol v. Fairman*, 700 F.2d 397, 400–01 (7th Cir. 1983). The elements of that defense are that the defendant was not the aggressor, that he actually and reasonably believed that he was threatened with unlawful force that put him in imminent danger of harm, and that he used a reasonable amount of force to defend himself. *People v. Keefe*, 567 N.E.2d 1052, 1056 (Ill. App. Ct. 1991).

Unfortunately for Damnitz, however, he cannot win on the facts as the appellate court stated them. The appellate court found that after chasing Damnitz and hitting him with a stick, "Vargas went back to his car," and Damnitz didn't shoot him until "[a] few minutes later." *Damnitz*, 645 N.E.2d at 467. Since Vargas walked away, Damnitz turned from victim to retaliator, and his self-defense theory evaporates. *See People v. Dillard*, 745 N.E.2d 185, 189 (Ill. App. Ct. 2001); *People v. Belpedio*, 569 N.E.2d 1372, 1376 (Ill. App. Ct. 1991); *People v. Easter*, 430 N.E.2d 612, 617 (Ill. App. Ct. 1981).

So Damnitz must somehow avoid the appellate court's statement of facts before he can show that he is entitled to the writ of habeas corpus. But Damnitz himself acknowledged at oral argument that he does not dispute the facts as recounted by the state court. In any event, this court must presume that those facts are correct so long as they are supported by adequate evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 358 (2003); *Miranda v. Leibach*, 394 F.3d 984, 999–1001 (7th Cir. 2005). Since there is no dispute that Vargas's testimony was consistent with those findings, an "adequate evidentiary basis" exists here, *see Miranda*, 394 F.3d at 999–1001; *cf. Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar.").

Moreover, even if the excluded evidence had been introduced for the purpose of showing Damnitz's state of mind—that is, his fear that Vargas might use deadly force—the evidence could not change the outcome for Damnitz. As mentioned above the state court's ruling was divided into two parts: exclusion of the evidence for the purpose of showing that Vargas was the aggressor—which the state court approved because the evidence had nothing to do with Vargas personally—and exclusion for

the purpose of showing Damnitz's state of mind, which the court labeled harmless error. *Damnitz*, 645 N.E.2d at 471–72. Damnitz does not challenge the first part of the appellate court's ruling, and he was wise not to: all agree that the evidence did not pertain to Vargas personally, and the state court undoubtedly acted within constitutional bounds by excluding it for this purpose, *cf. Hood*, 414 F.3d at 738–39 ("[T]he court, for good reason, found the evidence at issue to be speculative, remote, and therefore irrelevant, and it applied the state evidentiary rules accordingly."). The bottom line is that introducing the evidence could not have altered the critical finding that Vargas had withdrawn from the confrontation and thus Damnitz had become the aggressor.

Additionally, given the power of some of the evidence actually in the record—including the evidence of Cobras murdering Freaks—it is quite clear that the court did not altogether deny Damnitz the chance to make a defense, like in *Chambers* and the other cases. *See Horton v. Litscher*, 427 F.3d 498, 508 (7th Cir. Oct. 26, 2005). Nor was his interest in introducing the evidence—which might actually hurt his case by providing a motive for revenge—especially strong. *Cf. Carbajol*, 700 F.2d at 400. In the balance, the state court's ruling was not the kind of "arbitrary" ruling that would deny him the opportunity to make his defense. *See Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987); *Hood*, 414 F.3d at 738–39.

Finally, Damnitz argues that the district court wrongly adopted the state court's harmless error analysis without conducting a *de novo* review of the *entire* trial transcript as required by *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Although Damnitz is correct that a federal court generally should not find a harmless error on collateral review without reviewing the whole record, *id.* at 640–41 (Stevens, J., concurring); *Jenkins v. Nelson*, 157 F.3d 485, 495 (7th Cir. 1998), the argument does not persuade us that the district court erred.

Simply put, *Brecht* has no application here. On direct appellate review a court affirming a harmless error "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). By contrast, *Brecht* applies on collateral review where the question is whether a constitutional error "had substantial and injurious effect or influence in determining the jury's verdict."[2] *Brecht*, 507 U.S. at 638 (internal quotation marks

---

[2]Most circuits agree that, even after AEDPA's passage, *Brecht* continues to supply the harmless error standard for collateral review. *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005); *Jones v. Polk*, 401 F.3d 257, 265 (4th Cir. 2005); *Robertson v. Cain*, 324 F.3d 297, 305–06 (5th Cir. 2003); *Herrera v. Lemaster*, 301 F.3d 1192, 1199–1200 (10th Cir. 2002) (en banc); *Bulls v. Jones*, 274

(continued...)

and citations omitted); *Aleman v. Sternes*, 320 F.3d 687, 689–90 (7th Cir. 2003). Thus, in evaluating a state appellate court's harmless error determination on collateral review under 28 U.S.C. § 2254(d)(1) the question would be whether the court unreasonably applied *Chapman* or reached a decision contrary to it. *See Aleman*, 320 F.3d at 689–90. But even if the state court did unreasonably apply *Chapman*, the reviewing court may still deny habeas relief if the resulting error did not have the "substantial and injurious effect." *Brecht*, 507 U.S. at 623; *Aleman*, 320 F.3d at 689–90. In Damnitz's case there was no constitutional error in the first place (much less an unreasonable application of clearly established Supreme Court law) and thus no need to apply *Brecht*. *See Aleman*, 320 F.3d at 689–90. Especially as the facts found by the appellate court are undisputed, the district court acted within its discretion by deciding this case on the basis of the transcripts of the offer of proof detailing the excluded evidence, *see Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004).

For these reasons, the judgment of the district court is AFFIRMED. We thank Damnitz's appointed counsel, Matthew M. Wawrzyn, for his service.

---

[2](...continued)
F.3d 329, 335 (6th Cir. 2001); *Sanna v. Dipaolo*, 265 F.3d 1, 14–15 (1st Cir. 2001); *see also Ventura v. Attorney General, Fla.*, 419 F.3d 1269, 1279 n.4 (11th Cir. 2005). By contrast, the Second Circuit held that *Brecht* did not survive AEDPA's passage; according to that court, the only question now is whether the state court unreasonably applied *Chapman*. *Zappulla v. New York*, 391 F.3d 462, 466–67 (2d Cir. 2004). The Eighth Circuit, too, appears to have its doubts about whether *Brecht* survived. *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000).