**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200255-U

Order filed April 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0255 Circuit No. 18-CM-2491 |
| TROY B. GIVLER, | ) ) ) | Honorable John J. Pavich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The evidence presented at trial was sufficient to support a conviction for resisting a peace officer; (2) the court complied with Illinois Supreme Court Rule 431(b); and (3) the court properly denied defendant's motion for directed verdict and motion for judgment notwithstanding the verdict.

¶ 2    Defendant, Troy B. Givler, appeals his conviction of resisting a peace officer, arguing (1) the evidence was insufficient to find him guilty beyond a reasonable doubt; (2) the Will County circuit court improperly questioned the jury during *voir dire*; and (3) the court erred by denying his motion for directed verdict and motion for judgment notwithstanding the verdict. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant by criminal complaint with resisting a peace officer (720 ILCS 5/31-1(a) (West 2018)) in that he "knowingly resisted the performance of Richard Treece of an authorized act within his official capacity, being the arrest of [defendant], knowing *** Treece to be a peace officer engaged in the execution of his official duties, in that he tensed up and pulled away during handcuffing." The State also charged defendant with disorderly conduct but dismissed the charge before trial.

¶ 5          During *voir dire*, the circuit court asked the potential jurors whether they understood and accepted the following: (1) defendant is presumed innocent; (2) the State must prove defendant's guilt beyond a reasonable doubt; (3) defendant does not have to testify; and (4) if defendant does not testify that fact cannot be used against him. The court asked all jury members to raise their hands if they did not understand these concepts, and no one raised their hands. The court asked the parties to confirm for the record that no hands were raised.

¶ 6          Officer Doug Landano testified that on November 28, 2018, he was on patrol with Officer Joseph Gruben and another officer when they heard a call regarding a suspicious person in the Bolingbrook Meijer parking lot. The call said that there was someone in the parking lot acting strangely. Officer Richard Treece responded to the call, and Landano went as backup because he was in the area. Landano arrived at the scene and found Treece in the parking lot speaking with defendant. Treece asked Landano to speak with the complainants while Gruben remained with Treece. Landano spoke with two individuals who wanted defendant arrested. Based on the discussion with the complainants, Landano determined that a crime had occurred. He radioed Treece to arrest defendant.

¶ 7    Treece testified that he received a call regarding a disturbance in the Meijer parking lot where an individual was videotaping people near the Discount Tire lot. Upon arrival, Treece found defendant walking away from the area where the call was placed. When Treece attempted to question defendant about the incident, defendant pulled out his cell phone to record the interaction. Other officers arrived, and Gruben assisted Treece while Landano spoke with the complainants. Landano then radioed Treece to tell him that "there were complaints to be signed," which Treece understood to mean that the complainants were willing to prosecute. Treece asked defendant to turn around and put his hands behind his back. Treece testified that initially defendant complied without being forced. Treece placed a handcuff on one of defendant's wrists while Gruben held the other arm. Defendant then pulled away, brought back his elbow, and tried to walk away. In response, Treece and Gruben wrestled defendant to the ground and placed both his wrists in handcuffs. Treece testified that when defendant initially tried to pull away from them, Treece attempted to use a leg sweep but missed. Treece and Gruben spent approximately 10 seconds wrestling defendant to the ground. While on the ground, defendant was actively resisting the officers by pulling his hands away and putting them in front of his body, away from the officers.

¶ 8    When the State rested its case, defendant moved for a directed verdict, arguing that the State failed to prove defendant "knowingly resisted" the officers. The State argued that it provided enough evidence to meet all elements of the crime. The court denied defendant's motion.

¶ 9    Defendant testified he initially cooperated with the officers when Treece told him he was under arrest, but when the officers attempted to handcuff him, he experienced discomfort from a prior injury in his right arm. Defendant stated that he felt the discomfort when Gruben "twisted" his arm and that: "[He] was in a compromised position to where [he] couldn't pull away using my

3

wrist, so [he] dropped [his] shoulder and straightened [his] arm out to the point where [he] could pull it away."

¶ 10   In its rebuttal, the State called Gruben to testify. Gruben testified that he assisted in defendant's arrest. Treece placed a handcuff on defendant's left wrist, and defendant pulled his right arm away from Gruben. Gruben placed defendant's wrist behind his back without twisting his arm so that Treece could place the other handcuff on defendant's wrist. When defendant pulled away, Gruben and Treece were not able to immediately move defendant to the ground because he was actively resisting them by pulling away and tensing his muscles.

¶ 11   Defendant renewed his motion for a directed verdict at the close of the State's rebuttal. Defendant argued that the complaint charged defendant with resisting Treece's arrest, but the testimony reflected that defendant pulled his arm away from Gruben. The State argued that a joint arrest occurred. The court again denied defendant's motion.

¶ 12   The jury found defendant guilty of resisting a peace officer. Defendant filed a motion for judgment notwithstanding the verdict or for a new trial. At a hearing on the motion, defendant argued that the complaint charged him with an act against a different officer than what the evidence showed at trial. The court denied defendant's motion, holding that the officers were conducting a joint arrest, and both officers could have been named as the victim. Additionally, the court noted that any defects in the charging document were immaterial as it did not change trial strategy or otherwise surprise defendant.

¶ 13   The court sentenced defendant to the minimum sentence, 2 days in jail, with credit for time already served, 48 hours of community service, and 24 months' conditional discharge. Defendant appealed.

¶ 14                                    II. ANALYSIS

4

¶ 15                           A. Sufficiency of the Evidence

¶ 16            Defendant first argues that the State failed to prove beyond a reasonable doubt that he resisted a peace officer. In a challenge to the sufficiency of the evidence, we will not retry defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All reasonable inferences in favor of the State are allowed but unreasonable or speculative inferences are not permissible. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). When evaluating the sufficiency of the evidence, we will defer to the trier of fact on matters of witness credibility, or the weight afforded to each witness's testimony. *People v. Carraro*, 67 Ill. App. 3d 81, 85 (1979).

¶ 17            Defendant was convicted of resisting a peace officer. To sustain defendant's conviction, the State must prove beyond a reasonable doubt that defendant "knowingly resist[ed] or obstruct[ed] the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her officially capacity." 720 ILCS 5/31-1(a) (West 2018).

¶ 18            Here, the complaint alleged that defendant resisted Treece, and that Treece's authorized act was effectuating defendant's arrest. Defendant contends that the State failed to satisfy its burden to prove that Treece engaged in any "authorized" act because the underlying reason for the arrest, a disorderly conduct charge, was dismissed and not discussed at trial.

¶ 19            The authorized act of a peace officer is a necessary element of the offense; it must be alleged specifically in the complaint and cannot be stated in general terms. See *People v. Stoudt*, 198 Ill. App. 3d 124, 128 (1990) (holding that a complaint stating that defendants knew the officer

5

"to be a peace officer engaged in the execution of his official duties" is too general). Regarding resisting a peace officer,

> "[u]nder section 7-7 of the Criminal Code of 2012 (720 ILCS 5/7-7 (West 2018)), '[a] person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer *** even if he believes that the arrest is unlawful and the arrest is in fact unlawful.' Accordingly, an arrest is considered an 'authorized act' for the purposes of section 31-1 even if it was an unlawful arrest." *People v. Borders*, 2020 IL App (2d) 180324, ¶ 51.

Physical acts of resistance support a resisting a peace officer charge, even when the underlying charge is unwarranted. *People v. Thompson*, 2012 IL App (3d) 100188, ¶ 13. Further, an officer may not make an arrest unless he believes there is probable cause to justify the arrest. *People v. Carroll*, 133 Ill. App. 2d 78, 80-81 (1971). The officer must make the initial determination, and because his position gives him the authority to make an arrest, an accused may not physically resist the arrest. *Id.*

¶ 20     Here, Treece's testimony outlined why he believed he and Gruben had probable cause to conduct the arrest. Treece testified that he believed he could arrest defendant, because Landano radioed him and told him there were complaints to be signed. This statement indicated to Treece that a crime had been committed and to proceed with the arrest. After Treece initiated the arrest, defendant resisted by pulling his arm away and attempting to move away from the officers. Defendant's actions forced the officers to wrestle defendant to the ground to effectuate the arrest. Thus, the evidence proved beyond a reasonable doubt that defendant resisted a peace officer. The fact that the charge defendant was arrested for, disorderly conduct, was eventually dismissed is immaterial. See *Borders*, 2020 IL App (2d) 180324, ¶ 51.

6

¶ 21        Defendant also argues that the complaint states that he resisted Treece, but the evidence presented at trial showed that if defendant resisted any officer, it was Gruben and not Treece. The evidence established that the officers were conducting a joint arrest, and therefore, defendant's act or resisting either officer named in the complaint is sufficient. Second, even if the officers were not conducting a joint arrest, this potential defect in the charging instrument is not fatal. In *People v. Montgomery*, 96 Ill. App. 3d 994, 998 (1981), the defendant was charged with aggravated assault and resisting a peace officer, with the complaint alleging that he pointed a weapon at Officer Romano. *Id.* The evidence at trial showed that Montgomery pointed his weapon at Officer Crescenti. *Id.* The court held that the defect in the indictment was immaterial, because

> "defendant has not shown that he was prejudiced in making his defense by the variance between the charge and the proof. *** [H]e has not claimed that the language of the complaint induced him to withhold evidence. Nor has he alleged *** that his defense turned upon the language used in the complaint. *** Had the complaint charged that he assaulted Officer Crescenti rather than Officer Romano, his defense would have remained unchanged." *Id.*

Like *Montgomery*, the instant defendant failed to demonstrate that his defense would have changed if the criminal complaint named Gruben instead of Treece as the officer whom defendant resisted. Defendant's defense was that he did not resist a peace officer at all, not that he did not resist Treece specifically. Therefore, the State presented sufficient evidence to prove beyond a reasonable doubt that defendant resisted a peace officer.

¶ 22                                                        B. *Zehr* Principles

¶ 23        Defendant argues that the circuit court erred in asking jurors collectively to raise a hand if anyone did not understand or accept each of the principles stated in Illinois Supreme Court Rule

431(b) (eff. July 1, 2012) rather than to ask each juror individually for an oral response. Defendant concedes that he forfeited this argument by failing to raise it in the circuit court, but he contends that this court should review his claim under the plain error doctrine. The first step of plain error review is to determine whether error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 24   Illinois Supreme Court Rule 431(b) states:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 25   The rule "mandates a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010); see also *People v. Magallanes*, 409 Ill. App. 3d 720, 730 (2011) ("Rule 431(b) requires the trial court to address all four *Zehr* principles in a manner that allows each venireperson an opportunity to respond whether he or she understands and accepts those principles."). Asking potential jurors to raise their hands if they disagree or do not understand the principles, and then reflecting on the record that no hands were raised, satisfies the rule. See *Magallanes*, 409 Ill. App. 3d at 729-30; *People v. Strickland*, 399 Ill. App. 3d 590, 602 (2010).

¶ 26        Here, the circuit court read the Rule 431(b) principles to the prospective jurors and asked that they raise a hand if they did not understand or accept one of the principles. The court, prosecutor, and defense counsel confirmed for the record that no one raised a hand. It is well settled that the court can ask questions to potential jurors as a group. Further, Rule 431(b) does not require that responses be oral rather than by a show of hands. *People v. Birge*, 2021 IL 125644, ¶ 27. The procedure followed by the circuit court was all that was necessary by the plain language of the rule, and therefore no error occurred. Since the method of response did not constitute error, it cannot constitute plain error. See *People v. Rinehart*, 2012 IL 111719, ¶ 21.

¶ 27        C. Motion for a Directed Verdict and Judgment Notwithstanding the Verdict

¶ 28        Defendant argues the circuit court erred in denying his motions for a directed finding and judgment notwithstanding the verdict. We review *de novo* a court's ruling on a motion for directed verdict and a motion for judgment notwithstanding the verdict. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37. While these motions are made at different stages of the trial process, "they raise the same questions and are governed by the same rules of law." *Id.* These motions require the circuit court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in a light most favorable to the State. See *People v. Withers*, 87 Ill. 2d 224, 230 (1981). "A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty." *Id.* In moving for a directed verdict, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion. *People v. Tibbs*, 57 Ill. App. 3d 1007, 1012 (1978). The circuit court does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict. *Id.* at 1013. In other words, a motion for a directed verdict of not guilty asks whether the State's evidence could

9

support a verdict of guilty beyond a reasonable doubt, not whether the evidence does in fact support that verdict. *People v. Connolly*, 322 Ill. App. 3d 905, 914 (2001).

¶ 29        Likewise, a motion for judgment notwithstanding the verdict should only be granted in instances where the State's evidence, when viewed in a light most favorable to the State, is insufficient to support a finding or verdict of guilty. *People v. Easter*, 102 Ill. App. 3d 974, 981 (1981). The standard for entry of a judgment notwithstanding the verdict is high and not appropriate unless the evidence " 'so overwhelmingly favors [defendant] that no contrary verdict based on that evidence could ever stand.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)).

¶ 30        Our analysis of the motion for a directed verdict is identical to the analysis applied above to the sufficiency of the evidence to support a finding of guilty. The only difference is that we must now only consider the evidence in the State's case-in-chief and not in its rebuttal. From our review, we find that the circuit court did not err in denying defendant's motion for directed verdict, as the evidence the State presented, viewed in the light most favorable to the State, could lead a reasonably mind to find defendant guilty beyond a reasonable doubt. See *Connolly*, 322 Ill. App. 3d at 914. The State presented evidence supporting each element of resisting a peace officer, such that the cause could be presented to a jury. Specifically, the State's evidence showed that defendant resisted Gruben and Treece when they attempted to place him under arrest. Defendant pulled his arm away as the officers attempted to place him in handcuffs and then moved away from the officers forcing the officers to wrestle defendant to the ground to effectuate the arrest. Therefore, the court properly denied defendant's motion for directed verdict. Further, the court did not err by denying defendant's motion for judgment notwithstanding the verdict, as the evidence presented

did not favor defendant so overwhelmingly that no contrary verdict based on the evidence could stand. See *Thornton v. Garcini*, 237 Ill. 2d 100, 107 (2010).

¶ 31                                     III. CONCLUSION

¶ 32          The judgment of the circuit court of Will County is affirmed.

¶ 33          Affirmed.