**UNITED STATES of America**

v.

**Harold WAPNICK, James LaFazia, Charles Gersh, Robert Ezersky, David Brill and Vincent Terrasi, Defendants.**

**No. 60–Cr.–63.**

United States District Court
E. D. New York.
Feb. 6, 1962.

See also 198 F.Supp. 359; 202 F. Supp. 712.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., for United States, John A. Occhiogrosso, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Herbert S. Siegal, New York City, for defendant Harold Wapnick.

BARTELS, District Judge.

Defendant Harold Wapnick, having been found guilty of sixteen substantive violations of 18 U.S.C.A. § 2312 (transporting motor vehicles in interstate commerce knowing the same to have been stolen) and also of conspiracy to transport such vehicles, after a jury trial, moves for a new trial on the basis of "newly discovered evidence", pursuant to Rule 33, Fed.Rules Crim.Proc., 18 U.S. C.A.

The two basic tests for measuring the substantiality of newly discovered evidence are those set forth respectively in Berry v. State [1], requiring, among other things, that such evidence "is so material that it would probably produce a different verdict, if the new trial were granted", and the less rigorous test of Larrison v. United States [2], which would permit a new trial if the evidence "might" have produced a different verdict assuming it meets the other qualifications. These rules have been discussed and analyzed in United States v. Costello, 2 Cir., 1958, 255 F.2d 876. The Larrison test has been stated to be limited to cases of "recantation or where it has been proved that false testimony was given at the trial". United States v. Hiss, D.C. N.Y., 1952, 107 F.Supp. 128, 136 [3]. With regard to the application of the Larrison test, the Court of Appeals has recently stated that *might* "means something more than an outside chance although much less than the 'would probably' of the Berry rule".[4] Apparently, neither test is adopted for all purposes but which test is to be applied will depend upon the circumstances of the individual case.

The basis for the instant motion is that Wapnick has discovered new evidence since the trial which seriously impugns the credibility of the Government's witness Irving Solkoff, and evidence which establishes that the testimony of the Government's witness Jose Monteiro was, at least in one respect, false.

## I.  Solkoff

Defendant Wapnick took the stand on his own behalf and testified that he had financed Roy and Monteiro in purchasing and repairing wrecked cars, had no knowledge that Roy and Monteiro were substituting stolen cars for wrecks, knew nothing about the "hot car racket" and did not know any of the car thieves, including one Vito Cappola,

---

1. 1851, 10 Ga. 511, 527.

2. 7 Cir., 1928, 24 F.2d 82.

3. Aff'd, 201 F.2d 372, cert. den., 1953, 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368.

4. Kyle v. United States, 2 Cir., 1961, 297 F.2d 507 (Nov. 29, 1961).

with respect to whom Wapnick testified as follows (Transcript, K.268):

> "Q How long have you known Vito Cappola?
>
> "A Never knew Vito Cappola.
>
> "Q Never met Vito Cappola?
>
> "A I might have seen him at Phil Roy's place, but I never had any conversation with him."

Subsequently at the close of defendant's case the Government called Irving Solkoff as a rebuttal witness. Solkoff stated that Wapnick was the husband of his wife's cousin and further testified as follows (Transcript, L.142):

> "Q Did you ever have occasion to introduce the defendant Harold Wapnick to Vito Cappola?
>
> "A Yes, I did."

Solkoff explained that he had gone to a basketball game with defendant Wapnick in "1958, approximately around the Thanksgiving or Christmas, or holiday [sic]" (Transcript, L.142), and that after the game he and Wapnick travelled to Brooklyn to get Solkoff's car which had been loaned to Vito Cappola. Solkoff added that Wapnick, after the introduction, had a ten or fifteen minute conversation with Cappola in Solkoff's presence. The testimony of Solkoff was restricted to the issue of the credibility of Wapnick's prior statement and by objection by defense counsel the nature of the conversation between Wapnick and Cappola was barred.

Wapnick now says that he has made two new discoveries since the trial with respect to Solkoff, one is that he never went to a basketball game with Solkoff until March of 1959, at which time he was introduced by Solkoff to one Jim Martin, and the other is that Solkoff had been previously convicted of a felony.

The first item consists of a revival of Wapnick's memory and is not "newly discovered evidence". Even if his version were true it would not present grounds for a new trial. Assuming Wapnick's affidavit is accurate, it in no way negates Solkoff's testimony that he introduced Wapnick to Cappola, but at best would change only the time or place of the introduction. An issue would still be left for the jury.

The second item, namely Solkoff's criminal record, was evidence available to the defendant for discovery by inquiry of Solkoff himself when he was on the stand, and therefore does not fall within the category of newly discovered evidence.

Such "newly discovered evidence" with regard to Solkoff meets neither the requirement of Berry that the evidence must not be merely impeaching, nor that of Larrison that the evidence must satisfy the court that testimony of a material witness is false. The "evidence" was potentially discoverable at the time of trial, and at best questions the recollection or credibility of a rebuttal witness. Even if this evidence had been adduced at the trial it would not have created more than an outside chance of changing the result.

## II. Monteiro

Wapnick states that he has recently discovered a cashier's check, endorsed by Monteiro, from which a conclusive inference must be drawn that Monteiro's testimony was false as to a material issue.

Defendant Monteiro testified that Wapnick had given him checks for the purchase of two wrecked cars from Campo Motors in New Jersey, one of which was a 1957 Chevrolet wreck, involved in Count 17 of the indictment; that he delivered to Wapnick the identification serial plate removed from the wreck and that Wapnick subsequently returned the plate to him for the purpose of affixing the same to a stolen Chevrolet; that he called Wapnick when the altered stolen car was ready, and that Wapnick told him that defendant James LaFazia would pick up the Chevrolet, which LaFazia did.

Government's witness Alfred DiNapoli subsequently purchased the stolen Chev-

rolet from LaFazia, who told DiNapoli that the car was being sold on behalf of defendant Ezersky.[5] In payment for the car LaFazia received $365 in cash and a cashier's check, drawn on the Royal State Bank of New York to the order of "Joe Hehl" and endorsed by Hehl and Di-Napoli, in the amount of $935. Wapnick discovered this check after the trial, and noted that it bears, beneath the endorsement of Alfred DiNapoli, that of Jose Monteiro.

At the trial, Wapnick testified that he had no knowledge of any transaction involving a 1957 Chevrolet wreck purchased from Campo Motors. He now asserts that the newly discovered check corroborates him and establishes the perjury of Monteiro. The essence of Wapnick's claim is that an inference must be drawn from Monteiro's endorsement on the check that Monteiro received the check as the proceeds of the sale of the car, and then the further inference that Monteiro perjured himself when he testified to Wapnick's involvement in the transaction including his knowledge of the substitution of a stolen car from the wrecked Chevrolet, since Wapnick did not receive the proceeds of the sale of that car.

At no time was Monteiro specifically asked whether he had received the proceeds of the sale of this 1957 Chevrolet, nor was there any evidence adduced to the effect that Wapnick had received such proceeds. To find that receipt of the check would establish perjury on the part of Monteiro the Court would have to assume that Monteiro, if asked, would have denied the receipt of the check or have been unable to explain how and for what purpose he received the same. Such assumptions cannot be made by the Court on a motion of this type. Monteiro was cross-examined at length and these questions were not asked of him. Moreover, the check itself does not show from whom Monteiro received it, since the only endorsement on the check be-

fore Monteiro's is that of DiNapoli. Consequently, on the present state of the record the check would not contradict any of Monteiro's testimony, and raises no new issue as to Monteiro's credibility.

One further point emerges. This entire transaction related only to Count 17, the conspiracy count, with regard to which there was substantial evidence connecting Wapnick to the conspiracy exclusive of the testimony of Monteiro. Therefore, assuming this evidence was not discoverable at the time of the trial, it is so unconnected with the actual testimony of the witness that it is impossible to say upon this record that if produced upon the trial it might have affected the verdict.

Motion for a new trial based on "newly discovered evidence" is denied.

---

5. It may be noted that the only defendant with whom Ezersky had any deal-

ings, according to the trial testimony, was Wapnick.