THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LOUIS BELPEDIO, Defendant-Appellant.

Second District   No. 2—90—0140

Opinion filed April 10, 1991.

Louis B. Garippo and Susan G. Fiebus, both of Louis B. Garippo, Ltd., of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Anthony Peraica, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Louis Belpedio, was charged by indictment with two counts of aggravated battery (Ill. Rev. Stat. 1989, ch. 38, pars. 12–4(a), (b)(4)). The charges stemmed from an incident in which defendant punched Luke Massar in the face at the end of a touch-football game at Jewett Park in Deerfield, Illinois, on September 5, 1989. Following a bench trial on December 13, 1989, defendant was found guilty of aggravated battery as charged in the indictment. On January 31, 1990, following the denial of defendant's post-trial motion, the trial court sentenced defendant to terms of six months' incarceration in the county jail and 30 months' probation. The court also ordered defendant to perform 200 hours of community service, to undergo psychiatric counseling as directed by court services, and to make restitution to Massar in the amount of $924.37. Defendant appeals, contending that he was not proved guilty of aggravated battery beyond a reasonable doubt. We affirm.

On September 5, 1989, defendant and Massar were participants in an organized touch-football league game. The game was played according to the basic rules of flag football, although it was nevertheless a touch-football game. There was to be no blocking below the waist, no blocking on kickoffs, and 20-yard markers were used for first downs. It was refereed by two officials. Touching was allowed anywhere on the body with one hand, and such contact would end a play.

According to Edward C. Gozdecki, who officiated as a linesman at the game on September 5, the game was marred by unnecessary roughness, and one player had been ejected. About 10 minutes before the end of the game, Gozdecki and the other official, James Pinas, the backfield referee, warned both team captains that any more provocative conversation or physical conduct would result in a double forfeit of the game, that is, a loss for both teams.

Luke Massar, a 26-year-old accountant, testified at trial. Massar was 6 feet tall and weighed 210 pounds. Massar's team was losing, 21 to 6. Massar was a player for the offensive team and his primary task was blocking. When the game was nearly over, Massar ran toward

the right boundary line to receive a pass. As he was running forward, he was looking backward, over his right shoulder, toward the quarterback; he was unable to see downfield in front of him. Upon receiving the ball, Massar turned in order to get across the first down marker. As he turned, Massar came into contact with defendant, whom Massar was surprised to find there.

Massar further testified that, after the initial contact, defendant grabbed Massar's shirt with both hands and was pushing against Massar's throat, using foul language. As defendant pushed Massar back, Massar pushed defendant by hitting defendant's shoulders solidly with both hands so that the players became separated. Then they began to walk towards each other. There was a referee a few yards away. Massar raised both his hands in an upward direction and looked at the referee inquisitively, as if to say, "What's going on?" Massar then only recalled that he lost consciousness. He denied ever having hit defendant with his elbow.

Other testimony reveals that, at this point, Massar had been hit by defendant. Massar's injuries required medical treatment at Highland Park Hospital, where he received stitches to the left side of his lip, his nose and his eye. Massar suffered a broken nose which required corrective surgery and which remained permanently altered.

Massar's brother-in-law and teammate, 32-year-old Scott Beinlich, testified that he was also playing on Massar's team on the date in question. Beinlich observed from the sideline that, when Massar caught the ball, defendant grabbed him in the upper chest, up by the neck. Massar broke free by pushing defendant away. Massar then stood in place and defendant came toward him. Massar put his hands up in the air and looked toward the referee. Defendant then struck Massar twice in the face: once in the jaw or mouth and once in the nose. Massar was knocked to the ground; he was "knocked out" and was temporarily disoriented as he got back up. His lip and his nose were split open. Prior to this incident, Beinlich had not observed any other contact between Massar and defendant. He did not see defendant swing and miss Massar.

Edward C. Gozdecki, a paid referee who was also employed as a schoolteacher, provided referee services to the Deerfield Park District. He officiated as a linesman, and his fellow referee, James Pinas, acted as the backfield judge. Gozdecki characterized the game as an "emotional contest" where there was a lot of bantering and "cheap shots." There was some pushing and shoving which was fairly normal in this kind of game. About 10 minutes before this incident, he and Pinas had warned the two teams of a possible double forfeit for im-

permissible conversation or roughness. Gozdecki was about 25 yards away to the left of Massar, while Pinas was about two yards to Massar's right at the time of the play.

When the quarterback released the ball, Gozdecki looked back toward him. On hearing a whistle blown by Pinas signalling the end of the play, Gozdecki then drew his attention to where the ball had been thrown; the ball was on the ground. He saw both Massar and defendant "jabbering." Gozdecki saw Massar throw an elbow but could not tell if contact had been made. He then threw down a flag, which indicated he was going to penalize both teams. Gozdecki ran toward the players. He observed Massar pushing defendant away from him with open palms. Gozdecki described the pushing as a "get out of my face type of thing." After a "pregnant pause," he observed defendant throw three punches, "left, right, left." Gozdecki thought the first punch missed Massar. The other two punches hit Massar's face, and he fell to the ground. Then the referees called the game. Massar, in a dazed condition, was led to the sideline.

James Pinas testified that, at the time of the incident, he was about six feet from Massar. Defendant was playing for the defense. He observed both Massar and defendant jump up for the ball. As they came down, Massar's elbow hit defendant's head. The elbow contact was a continuation of the attempt to catch the ball. After they both came down to the ground, both players attempted to get the ball. Defendant asked Massar what he thought he was doing. After some words were exchanged, the players began some "minor" pushing and shoving at each other with their hands. Both referees threw their flags. Pinas had just previously blown the whistle to signal the end of the play.

Pinas attempted to break up the altercation by going between the players and spreading them apart. Defendant threw a punch which did not make contact. Pinas then backed away. Then defendant punched Massar twice in the face, causing Massar to fall to the ground.

On cross-examination, Pinas stated that, although Massar's elbow hit defendant, it was not "thrown." Massar did not throw a punch at defendant during the exchange of words. Pinas said that Massar walked toward defendant, who was standing his ground. As Massar walked toward defendant, defendant punched Massar.

The 26-year-old defendant testified in his own behalf. He was 5 feet 10 inches tall and weighed 225 pounds. The incident occurred with just about a minute of play left, and defendant's team was winning. After the quarterback released the ball, defendant went toward

Massar to tag him. As Massar caught the ball, defendant tagged him with his left hand on Massar's chest and his right hand on Massar's back. According to defendant, as Massar turned around, Massar hit defendant in the face with his elbow. As soon as defendant had touched Massar, the whistle was blown, indicating the play was dead. Defendant grabbed Massar by the shirt, saying, "Was that necessary?" Then Massar turned around and threw his right elbow against the side of defendant's head. Thereafter, defendant became "scared" and believed Massar was going to hit him. Massar pushed defendant and threw a left punch. Defendant was standing his ground. Massar's punch missed defendant. Defendant then punched Massar, but defendant believed the first punch might have missed Massar. Defendant said he punched Massar only once more. Defendant denied that any official came up to the two players to intervene.

Defendant also presented the testimony of two of his teammates: Anthony Belmonte, a lifelong friend of defendant, and William T. Hogan III. Their testimony agreed almost exactly with defendant's as to the essential points of the physical contact and the absence of an intervening referee.

After hearing closing arguments and after noting that the two referees were the most credible witnesses, the trial court found defendant guilty of two counts of aggravated battery.

On appeal, defendant challenges the sufficiency of the evidence and argues that he raised a claim of self-defense; that the State failed to establish beyond a reasonable doubt that Massar was not the aggressor and that he had not, in good faith, withdrawn from physical contact and communicated such withdrawal to defendant. Defendant acknowledges that there was conflicting evidence. The State argues that defendant failed to establish his affirmative defense and that the State proved beyond a reasonable doubt that it was defendant who was the aggressor.

This case presents a unique set of facts; we have found no Illinois case discussing a claim of self-defense in the context of an aggravated battery occurring during a football game, or, more precisely here, at the end of a football game. However, our traditional rules of law concerning aggravated battery and self-defense remain applicable.

■ A person is justified in using force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force; furthermore, a person is justified in using force intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death

or great bodily harm to himself or another. See Ill. Rev. Stat. 1989, ch. 38, par. 7—1.

■ ■ To establish a defense of self-defense, the defendant must show that: (1) unlawful force was threatened against him; (2) he was not the aggressor; (3) he believed the danger of harm was imminent; (4) force was necessary to avert that danger; and (5) the amount of force was necessary. (*People v. Alcazar* (1988), 173 Ill. App. 3d 344, 349.) Once these elements are established, the burden of proof shifts to the State (*Alcazar*, 173 Ill. App. 3d at 349) to prove the defendant's guilt beyond a reasonable doubt as to that issue, together with all the other elements of the offense (*People v. Woods* (1980), 81 Ill. 2d 537, 542). The validity of a claim of self-defense depends on the reasonableness of defendant's belief in using force under the circumstances. (See *People v. McGrath* (1989), 193 Ill. App. 3d 12, 26-27; *Alcazar*, 173 Ill. App. 3d at 349.) Whether there was a justifiable use of force is an issue to be determined by the trier of fact, who must consider whether the State has negated beyond a reasonable doubt any one of the elements justifying the use of force. If the State has negated any one of the elements justifying the use of force, then the State has carried its burden of proof as to that issue. *People v. Tucker* (1988), 176 Ill. App. 3d 209, 216.

■ The right of self-defense does not justify a person in committing an act of retaliation and revenge (*Woods*, 81 Ill. 2d at 543), nor does it permit one to pursue and inflict injury upon even an initial aggressor after the aggressor abandons the quarrel (*People v. Huddleston* (1988), 176 Ill. App. 3d 18, 34; *People v. Easter* (1981), 102 Ill. App. 3d 974, 980). If one responds to a confrontation with such excessive force that one is no longer acting in self-defense but in retaliation, the excessive use of force renders one the protagonist; a nonaggressor has a duty not to become the aggressor. *People v. Nunn* (1989), 184 Ill. App. 3d 253, 269.

■ ■ A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43.) It is not the function of the reviewing court to retry the defendant; rather, the determination of the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are the responsibilities of the trier of fact. (*Jimerson*, 127 Ill. 2d at 43.) The trier of fact need not accept as true testimony concerning self-defense presented by the accused. (*People v. Holtz* (1974), 19 Ill. App. 3d 781, 790.) The relevant inquiry on review is whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jimerson*, 127 Ill. 2d at 44.

Applying the above principles, we find that the evidence does not support defendant's claim of self-defense, but, rather, it supports the State's case. Pinas, a credible and neutral observer who was closest to the play, testified that, after Massar attempted to catch the ball and defendant "tagged" him, Massar's elbow hit defendant as a continuation of the action of catching the ball as Massar was coming back down. Pinas saw neither an elbow "thrown" nor a punch by Massar. There was then an exchange of words and some pushing and shoving between the players. The testimony shows that defendant grabbed Massar by the shirt. It is clear that Massar did push defendant away from him. However, at this point, Pinas attempted to break up the confrontation by moving between the players. Then, defendant threw a punch that missed. Pinas withdrew, and defendant punched Massar in the face twice, injuring him. While it was Gozdecki's testimony that he saw Massar throw an elbow apparently after the players were "jabbering," he could not state unequivocally that the elbow had made contact. He did testify that, after a pause in the confrontation, defendant threw three punches at Massar. This testimony is consistent with that of Pinas. Neither referee saw Massar throw a punch at defendant.

■ Massar's and Beinlich's testimony can be viewed as consistent in showing that Massar's initial contact with defendant, as Massar came down from catching the ball, was unintentional or was at least within the bounds of ordinary play. Defendant's testimony admits that, after Massar purportedly threw out his elbow at him, defendant grabbed Massar by the shirt. While defendant's testimony indicates that Massar elbowed him twice and also punched defendant with his left hand and it was only then that defendant punched Massar, this version is contrary to the testimony of the four State witnesses, two of whom were disinterested observers. There is no evidence from those witnesses that Massar ever punched defendant. Rather, the weight of the evidence is that Massar, who pushed defendant away with open palms after the play and initial contact, was acting in a defensive rather than an aggressive posture even if he was standing his ground. It is clear from the testimony of both referees that it was after a pause in the confrontation and an attempted intervention by one of the referees that defendant punched Massar. Two of the three punches landed in Massar's face. Under the circumstances presented, the trial court could reasonably conclude that it was defendant who

was the aggressor rather than Massar. The totality of the evidence does not support this element of defendant's claim of self-defense, and the State's evidence was sufficient to show beyond a reasonable doubt that it was defendant who was the aggressor.

■ Even assuming *arguendo* that the physical contact was initiated by Massar's elbowing or pushing of defendant, we are forced to conclude that defendant responded by using an amount of force that was unnecessary and excessive under the circumstances. Defendant presented no persuasive evidence that he was seriously injured or that he was about to be seriously injured. Defendant's use of excessive force in punching Massar in the face at least twice, splitting his lip, breaking his nose, cutting his eye, and rendering him unconscious does not describe the actions of a person defending himself from an elbowing or a shove. Rather, these are the actions of a person seeking revenge or retaliation. The brutality of the defendant's attack upon the victim belies any argument that defendant was acting to defend himself. In using such brutal and excessive force, defendant clearly became the aggressor even if it could be said that Massar initiated the contact. See, *e.g., People v. Woods*, 81 Ill. 2d at 543-44; *People v. Nunn*, 184 Ill. App. 3d at 270.

■ The trial court was not required to accept as true the testimony presented by the accused concerning his claim of self-defense. Rather, in weighing such evidence, it was to consider the probability or improbability of the testimony under the circumstances and the testimony of the witnesses other than the accused. (See *People v. Holtz* (1974), 19 Ill. App. 3d 781, 790.) Obviously, the trial court did not believe the version presented by the defense. The trial court found defendant's conduct clearly outside the bounds of acceptable or justifiable conduct even in the context of a touch-football game. We concur.

■ The totality of the evidence provided no basis upon which the court could find that defendant reasonably believed the use of such excessive force was necessary to prevent great bodily harm to himself. (See *Woods*, 81 Ill. 2d at 544.) In viewing the evidence in the light most favorable to the prosecution, we conclude that the trial court, as the trier of fact, properly found that all of the essential elements of the crime were proved beyond a reasonable doubt.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

REINHARD, P.J., and DUNN, J., concur.