# Illinois Official Reports

## Appellate Court

---

### *People v. Moore*, 2018 IL App (3d) 160271

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GORDON K. MOORE II, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0271 |
| Filed | November 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-CF-104; the Hon. Albert L. Purham Jr., Judge, presiding. |
| Judgment | Affirmed in part and dismissed in part. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a stipulated bench trial, defendant, Gordon K. Moore II, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)) and sentenced to 45 years in prison. Defendant's conviction and sentence were affirmed on direct appeal. *People v. Moore*, 2013 IL App (3d) 120275-U, ¶¶ 1, 19. Defendant filed a *pro se* postconviction petition, alleging actual innocence based on newly discovered evidence. The trial court summarily dismissed the petition in the first stage of proceedings. Defendant appeals, arguing that (1) the trial court erred in summarily dismissing his postconviction petition and (2) certain fines that were imposed upon him as part of his sentence must be vacated because the fines were imposed by the circuit clerk and not ordered by the trial court. We affirm the trial court's summary dismissal of defendant's postconviction petition and dismiss the remainder of defendant's appeal for lack of appellate jurisdiction.

¶ 2                                    FACTS

¶ 3    In February 2011, defendant was charged with first degree murder for the stabbing death of his estranged wife, Teresa Moore. In pretrial discovery, defendant notified the State that he intended to assert at trial that "he suffered serious provocation, which when viewed in light of [his] depressed mental state, caused him to act under a sudden and intense passion." In other words, defendant was going to try to raise at trial that the killing was second degree murder and not first degree murder. To support that assertion, defendant planned to have two mental health professionals who had seen defendant both before and after the offense testify as expert witnesses at trial regarding defendant's mental state at the time of the offense and the effect that the pending divorce, the potential loss of his children, and defendant's use of alcohol and prescription medication had on his mental state. The State filed a motion *in limine* to exclude that testimony. A hearing was later held on the motion.

¶ 4    At the hearing, the trial court reviewed a report from one of the proposed expert witnesses and a letter from the other. Of relevance to this appeal is the report. The report indicated that, about six months after the killing occurred, defendant talked to the doctor about the events leading up to Teresa's death. Defendant stated that he had been living with his parents and that Teresa had told him that she did not love him anymore. On the day of the murder, defendant agreed to meet Teresa at the couple's home to discuss the terms of their divorce. Defendant knew it would be difficult, so he drank 5 beers and took 12 Vicodin tablets before the meeting. After an hour of discussion, Teresa told defendant that she was going to file for sole custody of the couple's three children and move out of state to be with a man she met online. At that point, defendant and Teresa were in the garage. Defendant became "hysterically blind" and "blacked out." He felt enraged, lost, and hopeless. When defendant woke up, he had a knife in his hand, and blood was everywhere. Defendant noticed that Teresa was not breathing, and he wanted to end his own life. He then stabbed himself and collapsed.

¶ 5    At the conclusion of the hearing, the trial court granted the State's motion *in limine*. In so doing, the trial court found that the proposed expert witness testimony was irrelevant because there was no proof of any legally recognized form of provocation. The trial court indicated that the form of provocation that was potentially applicable in this case was mutual combat

but noted that defendant had made no showing that mutual combat occurred between him and Teresa.

¶ 6 In January 2012, the case proceeded to a stipulated bench trial. The evidence adduced at the stipulated bench trial showed that on the date in question, defendant went to the couple's home and had a conversation with Teresa. The couple's 14-year-old daughter, E.M., was present in the home at the time, as was their 3-year-old son. An argument ensued between defendant and Teresa, and defendant was cursing and yelling. Teresa and E.M. told defendant to leave several times, but defendant refused. As E.M. was taking her little brother back to his room, she heard the door to the garage open and heard a thud come from the garage. E.M. ran to the garage and found defendant on top of Teresa. Defendant was grinding a knife back and forth into the front of Teresa's throat area. Teresa was on her back on the garage floor, was covered in blood, and was barely breathing. E.M. jumped on defendant's back and started hitting him with her fists to try to save Teresa. Defendant continued to stab Teresa, stating over and over again that he loved Teresa and the children. Realizing that she could not help Teresa, E.M. went back into the house, grabbed her little brother, and started to run to a neighbor's house for help. As she ran through the garage, she saw defendant use the same knife to cut himself in the neck area. When E.M. got to the neighbor's house, the neighbor called 911. Police officers arrived shortly thereafter and found defendant and Teresa in the garage covered in blood. A police officer checked Teresa's vital signs but could not find a pulse. The officer could see that Teresa had a large laceration to her throat. The officer checked defendant's vital signs. Defendant had a pulse and was breathing. Upon inquiry, defendant told police, fire, and ambulance personnel that he "did it," that he was sorry, and that he did not want or deserve to live. An autopsy showed that Teresa had suffered nine stab wounds to her chest, including one that involved the right ventricle of her heart; two large stab wounds to her neck that transected her upper airway and her right carotid artery; and nine "defensive-type" stab wounds to her right and left hands, wrists, and fingers. The knife that was used in the stabbing was identified as a knife that belonged to defendant that he always carried on his person.

¶ 7 At the conclusion of the stipulated bench trial, the trial court found defendant guilty of first degree murder. The trial court later sentenced defendant to 45 years in prison. As part of the sentencing order, the trial court took a judgment against defendant for court costs and ordered defendant to pay a $200 deoxyribonucleic acid (DNA) testing fee. No other fines, fees, or costs were ordered by the trial court. The circuit clerk, however, subsequently imposed the following financial assessments, among others, against defendant: (1) a $0.25 "Circuit Clerk Oper/Adm Fund" assessment, (2) a $15 "State Police Operation Assistance Fund" assessment, (3) a $10 "State Police Services Fund" assessment, (4) a $7.50 lump sum surcharge, (5) a $3 "Violent Crime Fund" assessment, (6) a $50 "Court Usage" assessment, (7) a $4.75 "Drug Court Fund" assessment, (8) a $10 "Drug Court Operation" assessment, (9) a $10 "Medical Costs Fund" assessment, and (10) a $10 "State's Attorney Juvenile Expenses" assessment.

¶ 8 Defendant filed a direct appeal and challenged the trial court's grant of the State's motion *in limine*. This court affirmed the trial court's judgment. *Moore*, 2013 IL App (3d) 120275-U, ¶¶ 1, 19.

¶ 9 In April 2016, defendant filed the instant *pro se* postconviction petition. In the petition, defendant alleged a claim of actual innocence based on newly discovered evidence. More

specifically, defendant asserted that he could now remember what had happened during the incident and remembered that prior to his stabbing Teresa, Teresa had struck him about the head and face and had tried to stab defendant with his own pocket knife. According to defendant, he grabbed Teresa's hand that had the knife in it, pushed Teresa through the doorway into the garage, and fell on top of her. Defendant snapped, grabbed the knife from Teresa, and began stabbing her. Defendant did not come out of that enraged state until he felt his daughter jump on his back. It was then that he attempted to take his own life.

¶ 10    Later that same month, the trial court summarily dismissed defendant's postconviction petition in the first stage of proceedings. Defendant appealed to challenge the trial court's ruling.

¶ 11                                        ANALYSIS
¶ 12                    I. Dismissal of Defendant's Postconviction Petition
¶ 13    On appeal, defendant argues that the trial court erred in summarily dismissing defendant's *pro se* postconviction petition in the first stage of proceedings. Defendant asserts that his petition was sufficient to state the gist of a constitutional claim of actual innocence of first degree murder based upon newly discovered evidence in the form of defendant's recovered memory regarding the events leading up to his wife's death. More specifically, defendant contends that since trial, he has recovered enough of his memory to assert that he was acting in self-defense when his wife's death occurred or, alternatively, to assert that at the time of his wife's death, he was acting under serious provocation as a result of mutual combat or based upon an unreasonable belief in the need for self-defense. Defendant asserts further that the newly discovered evidence, as set forth in his postconviction affidavit, is material and noncumulative; that it places the evidence presented at trial in a different light; and that it is sufficient to undercut the court's confidence in the factual correctness of the guilty verdict because it creates, at the very least, a second degree murder claim, and at most, a claim for complete exoneration. In making those assertions, defendant maintains that his affidavit is not materially contradicted by other evidence and that his affidavit is the only evidence of the events leading up to his wife's death. Defendant also asserts that under Illinois Supreme Court precedent and contrary to the Fifth District Appellate Court's decision in *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 24, a case upon which defendant expects the State to rely, defendant is not required to establish that he would be entitled to complete exoneration of all crimes to establish a claim of actual innocence. For those reasons, defendant asks that we reverse the trial court's summary dismissal of defendant's postconviction petition and that we remand this case for second-stage proceedings, including the appointment of postconviction counsel for defendant.

¶ 14    The State argues that the trial court properly dismissed defendant's postconviction petition in the first stage of proceedings as being frivolous and patently without merit and that the trial court's ruling, therefore, should be upheld. In support of that argument, the State makes two primary assertions. First, the State asserts that defendant's recovered memory does not constitute newly discovered evidence under the law. As support for that assertion, the State cites one case from Illinois (*People v. Williams*, 242 Ill. 197, 204-08 (1909) (finding that the defendant's recovery memory that he was at home when the larceny at issue occurred was not newly discovered evidence so as to warrant a new trial but, rather, was evidence of facts that were known to the defendant, were forgotten, and were not diligently presented))

- 4 -

and a few additional cases from some other states (*United States v. Wapnick*, 202 F. Supp. 716, 717-18 (E.D.N.Y. 1962) (concluding that the defendant's revived memory of when he went to a basketball game and met a certain car thief, which was contrary to the testimony of the government's rebuttal witness, was not newly discovered evidence so as to require a new trial); *State v. Pittman*, 221 S.W.2d 163, 164-65 (Mo. 1949) (holding that the defendant's recovered memory that a certain person had telephoned the defendant's home and had spoken to the defendant at the time of the rape, which could be offered to corroborate the defendant's alibi defense, was not newly discovered evidence so as to warrant a new trial); *State v. Jiron*, 882 P.2d 685, 688-89 (Utah Ct. App. 1994) (finding that although recovered memory, such as from amnesia, could constitute newly discovered evidence, the defendant's recovered memory in that case of the events leading up to the alleged automobile accident that resulted in murder and arson convictions against the defendant was not newly discovered evidence warranting a new trial because the defendant failed to establish that the evidence could not, with reasonable diligence, have been discovered and produced at trial)). Second, and in the alternative, the State asserts that even if defendant's recovered memory was considered newly discovered evidence, defendant's petition was still properly dismissed because defendant failed to establish the gist of a constitutional claim since his claim of self-defense was positively rebutted by the record and since his claim of second degree murder does not qualify as a claim of actual innocence under the law. As anticipated by defendant, the State relies upon the *Wingate* decision in support of the latter contention (see *Wingate*, 2015 IL App (5th) 130189, ¶ 24). For all of the reasons set forth, the State asks that we affirm the trial court's summary dismissal of defendant's postconviction petition.

¶ 15    The Post-Conviction Hearing Act (Act) establishes a procedure for an imprisoned criminal defendant to collaterally attack his conviction or sentence based upon a substantial violation of federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Collins*, 202 Ill. 2d 59, 65 (2002). In the first stage of proceedings under the Act, the trial court has 90 days to independently review the postconviction petition, taking the allegations as true, and to determine whether the petition is frivolous or patently without merit in that it fails to state the gist of a constitutional claim. 725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). If the trial court finds in the first stage of proceedings that the petition is frivolous or patently without merit, it shall summarily dismiss the petition in a written order. See 725 ILCS 5/122–2.1(a)(2) (West 2016); *Hodges*, 234 Ill. 2d at 10. Such a dismissal is subject to *de novo* review on appeal (*Hodges*, 234 Ill. 2d at 9) and may be affirmed on any basis supported by the record (see *People v. Little*, 335 Ill. App. 3d 1046, 1051 (2003)).

¶ 16    Because the conviction of an innocent person violates the due process clause of the Illinois Constitution, an imprisoned criminal defendant has a right in a postconviction petition to assert a claim of actual innocence based upon newly discovered evidence. *People v. Morgan*, 212 Ill. 2d 148, 154 (2004). From a procedural standpoint, a claim of newly discovered evidence is resolved in the same manner as any other claim brought under the Act. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). To prevail on such a claim, a defendant must show that the evidence is "newly discovered," material and not cumulative of other evidence presented at trial, and of such a conclusive character that it would probably change the result upon retrial. *Morgan*, 212 Ill. 2d at 154. For evidence to be considered "newly

discovered," it must be evidence that was not available at the defendant's original trial and that the defendant could not have discovered sooner by the exercise of due diligence. *Id.*

¶ 17    In the present case, to determine whether defendant's recovered memory constitutes newly discovered evidence under Illinois law, we need only look to our supreme court's decision in *Williams*. In that decision, which was made over 100 years ago, our supreme court rejected a similar argument made by a defendant in a motion for a new trial in a criminal case. See *Williams*, 242 Ill. at 204-08. In so doing, our supreme court stated:

>    "It would be a dangerous rule to grant a new trial upon an *ex parte* statement that certain material facts which had previously been known had been forgotten. It may be that in a sense a forgotten fact is practically the same as if it had never been known, but the liability to fraud and the temptation to perjury in such cases forbid that a new trial should be granted because the party against whom a verdict has gone makes oath that he has forgotten material parts of his evidence. In order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, applications for new trial on account of newly discovered evidence should always be subjected to the closest scrutiny by the court. The rules of law which govern in such cases, if carefully observed, will generally accomplish justice. There is, of course, a bare possibility that a rigid adherence to these rules may in exceptional cases work an injustice; but this is unavoidable. Neither the law nor the means of enforcing it are infallible, nor are the methods appointed by the law for the discovery of truth and the detection of error immune from mistakes; but it is far better that a single person should suffer mischief than that the rules be so relaxed that every litigant will have it within his power, by keeping back part of his evidence and then swearing that it was forgotten, to destroy a verdict and obtain a new trial at his pleasure." *Id.* at 207-08.

¶ 18    The rationale stated in *Williams* is equally applicable under the facts of the present case and, indeed, is the same position that has been adopted by a majority of other jurisdictions, albeit in the context of motions for new trial. See A. Petry, Annotation, *Facts or Evidence Forgotten at Trial as Newly Discovered Evidence Which Will Warrant Grant of New Trial in Criminal Case*, 92 A.L.R.2d 992 (1963) ("[i]t is a well-settled rule of law, established both by judicial decision and by statute, that forgotten facts do not ordinarily constitute such newly discovered evidence as will justify a new trial, and that the want of recollection of a fact which by due diligence and attention might have been remembered, is not ground for a new trial in a criminal case"). We believe that the same rule would also apply to claims of recovered memory in a postconviction proceeding, such as in the instant case. We find, therefore, that defendant's recovered memory of the events leading up to his wife's death did not constitute newly discovered evidence under the law. See *Williams*, 242 Ill. at 204-08.

¶ 19    We note, however, that even if we were to find that defendant's recovered memory constituted newly discovered evidence, we would still have to conclude that defendant's postconviction petition failed to state the gist of a constitution claim and was properly dismissed for two reasons. First, as to defendant's claim of self-defense, the record in this case clearly rebutted that claim. Defendant's own affidavit established that he was not acting in self-defense at the time of Teresa's death since defendant averred that Teresa was on the ground, that he was on top of her, that he had taken the knife away from her, that he had the knife in his hand, and that he went into a rage and started stabbing her. Even in a light most

favorable to defendant, we cannot find that those statements would establish the gist of a claim of self-defense. See *People v. Belpedio*, 212 Ill. App. 3d 155, 160-61 (1991) (recognizing that the use of self-defense must, among other things, be reasonable and necessary and not for the purpose of retaliation). In addition, the evidence presented at the stipulated bench trial clearly negated any possible claim of self-defense as Teresa had been stabbed nine times in the chest, two times in the neck, and had nine stab wounds of a defensive nature to her hands. See *id.* at 161 (indicating that if a person responds to a confrontation with such excessive force that he is no longer acting in self-defense but in retaliation, the excessive use of force makes that person the aggressor).

¶ 20 Second, we agree with the appellate court in *Wingate* that a defendant's claim of second degree murder does not constitute a claim of actual innocence under Illinois law. See *Wingate*, 2015 IL App (5th) 130189, ¶ 24. Rather, to constitute a claim of actual innocence, a defendant's claim has to be able to completely exonerate defendant of the offense in question and all related offenses. See *id.* Thus, defendant's claim of second degree murder in the instant case does not establish the gist of a constitutional claim. See *id.*

¶ 21 In reaching that conclusion, we note that contrary to defendant's assertion on appeal, the decision in *Wingate* does not run afoul of the decisions of our supreme court on cases of actual innocence. See, *e.g.*, *People v. Washington*, 171 Ill. 2d 475, 489 (1996) (stating that for a defendant to be entitled to relief on a postconviction claim of actual innocence based on newly discovered evidence, the supporting evidence must be new, material, noncumulative, and of such a conclusive character as would probably change the result on retrial); *Morgan*, 212 Ill. 2d at 154 (same); *People v. Coleman*, 2013 IL 113307, ¶ 96 (reaffirming the standard set forth in *Washington* for postconviction claims of actual innocence based on newly discovered evidence). Rather, the appellate court in *Wingate* applied a more specific rule under the particular facts of that case—where a defendant was raising in a postconviction petition a claim that newly discovered evidence could reduce his first degree murder conviction to second degree murder. See *Wingate*, 2015 IL App (5th) 130189, ¶ 24. That is the exact same claim that defendant raised in the instant case. We find, therefore, that the *Wingate* decision is applicable here and that defendant's claim did not constitute a claim of actual innocence. See *id.*

¶ 22 II. Imposition of Certain Fines Upon Defendant

¶ 23 As his second point of contention on appeal, defendant argues, and the State agrees, that certain fines imposed upon defendant in the trial court must be vacated because the fines were imposed by the circuit clerk and were not ordered by the trial court. See *People v. Strong*, 2016 IL App (3d) 140418, ¶ 8 (the imposition of a fine is a judicial act; the circuit clerk has no authority to impose fines not ordered by the trial court); *People v. Johnson*, 2015 IL App (3d) 140364, ¶¶ 9-12 (recognizing that certain assessments imposed on the defendant were fines that could not be imposed by the circuit clerk); *People v. Burnett*, 2016 IL App (3d) 140837, ¶ 8 (same). However, pursuant to our supreme court's recent ruling in *People v. Vara*, we have no jurisdiction to rule upon this issue and must dismiss that portion of defendant's appeal. See *People v. Vara*, 2018 IL 121823, ¶¶ 23, 30 (finding that the appellate court had no jurisdiction to review fines that were imposed upon the defendant by the circuit clerk, and not by the trial court, because the entry of the fines by the clerk was a ministerial function and not a judgment—void or otherwise). Any questions as to the accuracy of the

financial assessments imposed upon defendant as recorded in the circuit clerk's records must be resolved through the cooperation of the parties and the circuit clerk or by the circuit court in a *mandamus* proceeding. See *id.* ¶ 31.

¶ 24                                    CONCLUSION

¶ 25        For the foregoing reasons, we affirm the trial court's summary dismissal of defendant's *pro se* postconviction petition in the first stage of proceedings and dismiss the remainder of defendant's appeal for lack of appellate jurisdiction.

¶ 26        Affirmed in part and dismissed in part.