**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220487-U

Order filed December 7, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0487 Circuit No. 90-CF-67 |
| | ) | |
| BRYAN D. CASE, | ) ) | Honorable James A. Andreoni, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices McDade and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court erred in granting defendant's amended postconviction petition.

¶ 2     The State appeals the Bureau County circuit court's order granting the amended postconviction petition filed by defendant, Bryan D. Case. The State argues the court erred in granting the petition because it was unverified, contained unnotarized exhibits, and was untimely filed. Further, the State contends that the record indicates defendant's original sentencing hearing

was compliant with the requirements of *Miller v. Alabama*, 567 U.S. 460, 477-81 (2012). We reverse and remand.

¶ 3                                   I. BACKGROUND

¶ 4      The facts in this case have been set forth in this court's opinion on defendant's direct appeal. *People v. Case*, 246 Ill. App. 3d 566, 567-76 (1993). Only a short summary of the facts relevant to this appeal is necessary here. Following a jury trial, defendant, a 17-year-old, was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(2)). The evidence at trial established that defendant's 15-year-old cousin was found dead on her bedroom floor, having been stabbed 20 times in the neck and upper body. Defendant had access to the victim's home and knowledge of its layout. Defendant's fingerprints were found on items that had been in the victim's purse. Several witnesses placed defendant near the scene at the time of the murder. One witness described a man fitting defendant's description running in the area toward a creek. Defendant had cuts on his finger that could have occurred at the time of the murder. Defendant knew details of the victim's wounds shortly after her discovery.

¶ 5      Defendant was interviewed by police on numerous occasions. He told police that he never touched any items in the victim's purse. He never admitted to the murder. Defendant told inconsistent stories about his whereabouts on the night of the murder and how he received the cuts on his finger. He admitted to going into the creek and splashing water on himself. Defendant testified in his own defense. Eight knives were admitted into evidence. Three of these knives could have caused the victim's wounds. Two were found in a field near the murder scene and the third was found in a cemetery near a creek. Defendant had been seen in both areas on the night of the murder.

¶ 6 During the sentencing hearing, the court considered defendant's 534-page presentence investigation report (PSI) that revealed: (1) the absence of defendant's biological father; (2) defendant's positive relationship with his mother and siblings; (3) defendant's average intellectual abilities and an intelligence quotient of 100; (4) defendant's psychosexual immaturities, strong dependency needs, and possible attention deficit disorder; (5) defendant's difficulties in dealing with authority and his impulsive, aggressive behaviors; (6) school records showing defendant's numerous school suspensions for his noncompliance and aggressive behavior; (7) defendant's alcohol use beginning at the age of 13; (8) defendant's failure to complete substance abuse treatment; (9) defendant's lack of prior adjudications or convictions; and (10) defendant's history of violent behavior that did not ultimately result in criminal charges. The court also considered the testimony of two of defendant's classmates. One classmate testified that defendant had thrown him into the side of a bus and detached his retina. The other student testified that defendant had held a knife to her neck and threatened her. The court considered the facts of the case, victim impact statements, and defendant's statement in allocution.

¶ 7 The court considered the arguments of the parties, including defense counsel's arguments that the court had sentenced a man "substantially older than [defendant] was" to 40 years' imprisonment. Further, defense counsel argued that the conduct of defendant when he was younger was not relevant where he had a lack of contact with the criminal justice system and had shown growth when "he moved to Chicago with his sister and *** appear[ed] to be living a reasonably structured, reasonably normal existence at that time." Defense counsel also highlighted defendant's positive recent work history.

¶ 8 In rendering its sentence, the court discussed the definition of brutal and heinous and noted that such a finding was not mandatory but within its discretion. The court expressed doubt as to

3

whether a psychologist could provide treatment and rehabilitate defendant. Emphasizing the lengthy history of violence from a young age and the significant number of stab wounds to the victim, the court "[saw] no alternative in this case really, under these facts, for [it] to exercise [its] discretion in favor of sentencing the defendant, for the protection of the public, to a term of natural life in prison."

¶ 9      On direct appeal, defendant argued, *inter alia*, that his sentence was excessive because the court failed to give "adequate consideration [of] mitigating factors such as his youth, his drug and alcohol use, his lack of criminal history, his unhappy family background, and his positive employment history." *Id.* at 578. We affirmed defendant's conviction and sentence.

¶ 10     On March 4, 2021, defendant filed, through counsel, an unverified postconviction petition alleging that his sentence was excessive and violated both his eighth amendment rights as well as his Illinois constitutional rights under the proportionate penalties clause. Defendant cited *Miller* and its progeny in support of these claims and contended that his original sentencing hearing failed to consider his youth and its attendant characteristics as required. The petition was advanced to the second stage of proceedings. The State filed a motion to dismiss the petition on August 17, 2021, arguing that defendant's original sentencing hearing was constitutionally compliant. In September 2021, the court noted that the petition was unverified and, for the sake of expediency, granted leave to amend the petition prior to any motion being made. On January 22, 2022, defendant filed an amended postconviction petition which remained unverified. The amended petition acknowledged that it could be considered untimely but the new substantive rule announced by *Miller* established cause for its untimeliness. Subsequently, the State filed an amended motion to dismiss the petition which failed to argue that the amended petition should be dismissed for lack of verification or untimeliness.

4

¶ 11 At the hearing on the State's amended motion to dismiss, defendant argued that his eighth and fourteenth amendment rights, as well as his Illinois constitutional rights, had been violated when he was sentenced to natural life imprisonment without consideration of his youth and its attendant characteristics as required by *Miller*. Defendant argued that while his youth may have been considered, the record was devoid of any specific consideration of the characteristics of youth. Defendant contended that *People v. Buffer*, 2019 IL 122327 required a specific finding of incorrigibility. The State indicated that defendant was "entitled to have his case reviewed, and so that's why *** we're here at the second stage in this petition for post-conviction—or second stage in defendant's post-conviction relief petition"; however, they contended that defendant's petition failed to make a substantial showing of a constitutional violation because his original sentencing hearing was compliant with the requirements of *Miller*. The court denied the State's motion.

¶ 12 Following a third-stage evidentiary hearing where no new evidence was presented, the court granted defendant's amended postconviction petition. It found that the sentencing court's focus had been on whether the murder had been committed in a brutal and heinous manner. It found that, while several *Miller* factors did not apply to defendant, there was no indication that the sentencing court had considered the immaturity of youth or how a youthful brain develops. The court found that the record did not contain enough information to find the original sentencing hearing had been constitutionally compliant under the eighth amendment. The court did not rule on defendant's proportionate penalties claim. The State appealed.

¶ 13                                    II. ANALYSIS

¶ 14 On appeal, the State contends that the court erred in granting defendant's amended postconviction petition where it was unverified, and defendant failed to show cause excusing the

5

untimely filing of the petition. Further, the State argues that the record rebuts any claim that the sentencing court failed to adequately consider defendant's youth and its attendant characteristics.

¶ 15    The Post-Conviction Hearing Act (Act) creates a procedure for imprisoned criminal defendants to collaterally attack their convictions or sentences based on a substantial denial of their constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020). The Act provides for a three-stage proceeding. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). At the first stage of proceedings, a petition must state only the gist of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). A petition may be summarily dismissed if it is found to be frivolous or patently without merit. *People v. Moore*, 2018 IL App (3d) 160271, ¶ 15. When a petition is advanced to the second stage of proceedings, "the petitioner bears the burden of making a substantial showing of a constitutional violation." *People v. Domagala*, 2013 IL 113688, ¶ 35. At the second stage of proceedings, the State may challenge any nonjurisdictional procedural defects including, *inter alia*, timeliness and lack of verification. See *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *People v. Cage*, 2013 IL App (2d) 111264, ¶ 13. If a petitioner makes a substantial showing of a constitutional violation, the petition proceeds to an evidentiary hearing. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 16    Here, the petition advanced to a third-stage evidentiary hearing. At the hearing, the court heard no new evidence. It reviewed the transcript of the original sentencing hearing and heard arguments from the parties. Generally, when a third-stage evidentiary hearing contains no new evidence, the issues presented constitute a question of law which we will review *de novo*. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 17                               A. Procedural Defects

6

¶ 18        First, the State argues that the court erred in granting defendant's petition where it was unverified and untimely without a demonstration of cause excusing the late timing of his petition. A verification pursuant to section 122-1 of the Act "confirms that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67 (2002). When a petition is untimely, the petitioner must allege a lack of culpable negligence, otherwise the court shall dismiss the petition upon the State's motion. *Boclair*, 202 Ill. 2d at 101. The State failed to raise either issue in its amended motion to dismiss. Issues which are not raised in the circuit court are forfeited on appeal. *People v. Cruz*, 2013 IL 113399, ¶ 20. The State may choose to waive procedural defects where a defendant's petition presents a viable claim of a constitutional violation. See *Boclair*, 202 Ill. 2d at 101-02; *People v. Lander*, 215 Ill. 2d 577, 584 (2005).

¶ 19        Between the court's explicit granting of leave to amend the postconviction petition to include a verification and the acknowledgment that the petition could be considered untimely in defendant's amended petition, the State was aware of the procedural issues that existed with defendant's petition. It appears from the record that the State intentionally chose to forego dismissing the petition for procedural errors where it indicated to the court that defendant was "entitled to have his case reviewed" and proceeded to argue for a dismissal based on the merits of the claim. "Just as a petition can have merit despite its untimeliness [citation], so can a petition that is merely unverified [citation]." *People v. Turner*, 2012 IL App (2d) 100819, ¶ 46. Accordingly, the record demonstrates that the State has waived these issues.

¶ 20                                    B. Eighth Amendment Violation

¶ 21        Next, the State argues that the court erred in granting defendant's amended postconviction petition where it concluded that the sentencing court failed to consider defendant's youth and its attendant characteristics. Here, the record reflects that the sentencing court expressly indicated that

it had reviewed and would consider the PSI which contained extensive information regarding defendant's youth. Further, defense counsel made arguments regarding defendant's youth and ability to change as he aged. A sentencing court will necessarily consider a defendant's youth if it has the discretion to do so, particularly where defense counsel "advances an argument based on the defendant's youth." *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1319 (2021). Nothing in the record demonstrates that the sentencing court explicitly refused to consider the PSI, or the evidence regarding defendant's youth.

¶ 22    At the sentencing hearing, defendant faced a range of 20 to 60 years' imprisonment with day-for-day credit unless the court, in its discretion, made a finding that the conduct was exceptionally brutal and heinous. Such a finding would allow the court to sentence defendant to either an extended-term sentence of 60 to 100 years' imprisonment or natural life. See Ill. Rev. Stat. 1989, ch. 38, ¶¶ 1005-8-2(a)(1), 1005-5-3.2, 1005-8-1(a)(1)(a), (a)(1)(b). Thus, the court had the discretion to impose less than a *de facto* life sentence and chose not to after consideration of all the evidence and arguments presented. Where, as here, the court had the discretion to consider a defendant's youth and its attendant characteristics and impose a less than *de facto* sentence, its sentencing decision is constitutionally sufficient and will not violate the eighth amendment. See *People v. Wilson*, 2023 IL 127666, ¶ 42; *Jones*, 593 U.S. at ___, 141 S. Ct. at 1313. Accordingly, defendant could not make a substantial showing of a constitutional violation and his eighth amendment postconviction claim should have been denied.

¶ 23    In reaching this conclusion, we reject defendant's argument that after our supreme court's recent decision in *Wilson*, a determination of " 'irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation' " is still required by *Buffer*. *Wilson*, 2023 IL 127666, ¶ 30 (quoting *People v. Holman*, 2017 IL 120655, ¶ 46); see also *Buffer*,

2019 IL 122327, ¶ 40. In *Wilson*, our supreme court explained that *Miller* did not require the circuit court to find, either explicitly or implicitly, that a juvenile defendant is permanently incorrigible to sentence them to life imprisonment. *Wilson*, 2023 IL 127666, ¶¶ 35-36, 38. The *Wilson* court explained that " 'no viable *Miller* claim exists, "so long as the sentence is not mandatory—that is [ ] so long as the sentencer has discretion to consider the mitigating qualities of youth and impose a lesser punishment." ' " *Id.* ¶ 40 (quoting *Commonwealth v. Felder*, 269 A.3d 1232, 1243 (Pa. 2022)). For the foregoing reasons, we reverse the judgment of the circuit court awarding defendant a new sentencing hearing and remand for further postconviction proceedings concerning his proportionate penalties claim.

¶ 24                                      III. CONCLUSION

¶ 25         The judgment of the circuit court of Bureau County is reversed and remanded for further postconviction proceedings.

¶ 26         Reversed and remanded.